IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 20-51780-rbk |
| EARTH ENERGY RENEWABLES, LLC | § | |
| | § | CHAPTER 11 |
| | § | SUBCHAPTER V |
| DEBTOR | § | |

**RESPONSE OF THE DEBTOR-IN-POSSESSION'S TO MOTION OF KEMIN INDUSTRIES TO REMOVE DEBTOR-IN-POSSESSION**

TO THE HONORABLE RONALD B. KING, CHIEF UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Earth Energy Renewables, LLC ("Debtor"), and files this its Response to the Motion to Kemin Industries, Inc. for Removal of the Debtor-in-Possession (the "Motion") and respectfully represents:

1. On the 20th day of October 2020, (the "Petition Date") the Debtor filed a voluntary petition herein under Chapter 11 of the United States Bankruptcy Code.

2. Debtor has continued in possession of its property and as Debtor-in-possession is managing its property.

3. Debtor admits the allegations of the first sentence of paragraph 1 of the Motion and denies the allegations of the second sentence.

4. Debtor admits the allegations of paragraphs 2 through 8.

5. Debtor denies the allegations of paragraph 9. The License Agreement, on Page 1, states that there are to be four parties to the License Agreement: the Debtor, Kemin, Keresa and Steve Robson. Robson never executed the License Agreement and it never went into effect. The copy of the License Agreement in Exhibit C is not signed by Robson or his company, Sustainable Conversion Ventures.

6.    Debtor admits the allegations of paragraph 10.

7.    With respect to paragraph 11, the Debtor admits that, on a not-fully-diluted basis, excluding warrants or other equity instruments which could be exercised at any time, Kemin, Keresa and Robson controlled Units, together may have during some periods of time, held approximately 1/3 of the Units of the Debtor. With respect to the second sentence of paragraph 11, the Debtor admits that it is a summary chart of the Debtor's ownership Units, but denies that it represents a breakdown of all of the Unit owners.

8.    The Debtor admits the allegations of paragraph 12.

9.    With respect to the first part of the first sentence of paragraph 13, the Debtor can neither admit nor deny such statement as the Debtor has not been able to locate any reported decisions that interpret § 1185. The Debtor admits that the language of § 1185 closely tracks that of § 1104(a) (1) and the staements in the last sentence of paragraph 13.

10.    The Debtor admits at the allegations of paragraphs 14 through 16 accurately quote the referenced Code sections and reported decisions.

11.    The Debtor denies the allegations of paragraphs 18 and heading A which immediately follows paragraph 17.

12.    The Debtor admits that the Unit Purchase Agreement contains the provisions referred to in paragraph 18, but denies that the Debtor failed to meet these obligations.  During the budget period (August 2018 through June 30, 2019) in which Kemin funded $1,000,000 under the Unit Purchase Agreement in several smaller amounts (rather than the lump sum of $1,000,000), Kemin personnel exercised full

control and approval of the expenditure of their funds on a weekly basis. Kemin employees, Marc Scantlin, Kemin President, Kally Probasco, Kemin Manager of the EER Project and Brody Wells, Kemin V.P. of Finance, Nick Romsey, Kemin engineer, Lan Ban, Kemin scientist and Kenny Erdoes, Kemin's Chief Engineer reviewed the Debtor's activities and approved every expenditure in advance, even down to items less than $100 and the amount of interest charges on the petty cash Visa credit card. This activity was monitored by Kemin through hundreds of emails, spreadsheets, phone calls and meetings. The same Kemin personnel, along with Keresa personnel, held bi-weekly meetings with the Debtor's engineering staff and R&D team to monitor the operation of the pilot plant, collect data and work on the White Paper that Kemin proposed to prepare. Kemin personnel were in Bryan, Texas present at the plant almost every week for multiple day visits almost every week during this period of time. They literally took over the operation, insisting specific operating parameters down to the exact one-tenth of pH acidity in each fermentation tank e.g., should it be 6.8 versus 6.7? During this time, Kemin personnel changed process operating protocols previously established by the Debtor's science team, who invented the technology. Kemin's management takeover of this particular pilot plant data run resulted in the need to extend the testing timeline by several months in order to repeat experiments and ultimately produced disappointing performance. Subsequent pilot plant test runs performed by the Debtor under proper conditions produced outstanding results.

13. With respect to paragraph 19, the Debtor denies the allegation in the first sentence and admits the allegations of the second. Kemin's consent was not needed when the Debtor obtained 2/3rds consent from other members.

14.     With respect to paragraph 20, the Debtor admits the allegations of the first sentence and denies the allegations of the second. The Debtor, however, also notes that Section 6.3 provides a very important "carve out" from the Super Majority vote requirement by exempting additional capital necessary to complete the Summary Business Plan.  The Summary Business Plan includes construction and operation of a fully integrated pilot plant and development of a full scale commercial plant, the total of which was expected to exceed $30 Million at the date of that document.  Management was broadly authorized to procure funds to fully complete the Summary Business Plan. The Debtor obtained consent from more than 2/3rds of the number of Units to enter into the loan agreement with Ara, including written consent from Keresa, both before and after the initial January 2020 funding.  Debtor denies that consent from or notice to Kemin was required to enter into the Ara agreement. Debtor admits that it provided the recited representations and warranties to Ara. Debtor denies that the representations were false. Debtor admits that the Schedules disclose that Ara advanced $2,852,491, but denies that all of those funds were advanced on or about January 13, 2020 as they were advanced in a series of tranches over nine months. With respect to the last sentence, Debtor denies that there has been no explanation for how it spent the money as Ara was fully aware of how its funds were spent.  The use of Ara loan proceeds was discussed frequently during the period of time from January 2020 through October 2020 with members owning or controlling over 80% of the Units, some of whom were believed to be in frequent contact with Kemin in this regard.  During 2020, Keresa has had a representative living in Bryan, Texas who was frequently in contact with several employees of the Debtor and John Wooley.  This Keresa representative has been coming

to the pilot plant site almost every day since operations resumed after the Covid-19 shut down. Debtor believes that the Keresa representative is well informed of Debtor's activities and how the Ara loan proceeds were spent. Debtor believes that Kemin is frequently in contact with Keresa. One or more representatives of Ara were present at the Debtor's plant frequently from November 2019 through early October of 2020 (sometimes daily, sometimes weekly) and had access to all of the Debtor's technical and financial records and personnel. In addition, Ara scrutinized the Debtor's budget and expenditures and exchanged financial statements and Excel spreadsheets every month before advancing additional funds

15. With respect to paragraph 21, the Debtor admits the allegations of the first sentence. In the second sentence, the Debtor admits that it did not provide any advance notice of this bankruptcy filing to Kemin, but denies that it was required to give such notice to Kemin and denies that the case was filed without the consent of a Super Majority of the Units. The Debtor admits the allegations of the next sentence and denies the allegations of the last sentence. The managers had authority because they had the consent of 2/3rds of the Units.

16. With respect to paragraph 22, the Debtor denies the allegations of the first sentence, admits that the quotes are accurate and denies that the Debtor had defaulted under the Company Agreement.

17. Debtor denies the allegations of heading B which immediately follows paragraph 22.

18. With respect to paragraph 23, the Debtor admits that the case was filed a month ago. The Debtor denies that it has stated that it is wholly dependent on financing

from Keresa. The Debtor has repeatedly stated that it has other potential sources of financing. Debtor denies that it began the case deliberately failing to disclose to Keresa that the bankruptcy case had been filed. Debtor admits the allegations of the remaining sentences in paragraph 23, but denies that it intentionally left any party off of the creditor matrix. Kemin, for example, is not a creditor. Kemin is only a Unit owner.

19.     The Debtor denies all of the allegations of paragraph 24, except that the Debtor can neither admit nor deny what Kemin is or is not willing to do. The Debtor's plan for reorganizing its debt is to raise the money to pay off Ara and operate the company for an extended period of time.  Kemin is aware - as is Ara - that the Debtor's path to revenue and profitability has always been dependent upon successfully completing the lengthy, and well-known, steps required to develop and commercialize a revolutionary, new industrial technology.  These steps include laboratory testing, bench-scale testing, engineering design, permitting, construction, commissioning and operation of a fully integrated pilot-scale plant and ultimately development of a large, commercial-scale facility and the necessary regulatory and customer approvals.  Kemin has always been aware that the development of a revolutionary, new industrial process is very lengthy and challenging path, fraught with risk of failure at each step and likely to take 2 to 5 years.  Based on the early results of EER's pilot plant operation in 2019, it has been known to all parties involved that it would take, at least, until the end of 2022 to commission a large commercial scale plant and establish profitable revenue for EER. Ara's November 2019 Term Sheet originally proposed to invest equity in the Debtor of up to $45,000,000 to continue this business plan, so it is no secret to anyone that a

substantial amount of money was needed to complete the Debtor's undertaking. See doc #15-1, page 40 of 66 (the Ara term sheet).

20.     The Debtor admits the allegations of paragraph 25.

21.     With respect to paragraph 26, the Debtor admits the allegations in the opening section. With respect to the subparagraphs, the Debtor states the following:

(a) as has been stated on the record, the Debtor's apparent negative cash position was the result of reconciling its bank account to reflect a number of uncashed paychecks;

(b) as has been stated on the record, the three loans described were actually made before the case was filed but the funding of those loans was not received until the day of or after the case was filed. The Debtor denies that these were issued without compliance with the Company Agreement. The Debtor admits that it was done without notice to Kemin, but no notice was required under the Company Agreement;

(c) the Debtor admits that the Court did not approve funding to cover the outstanding checks, but denies that it was attempting to pay down those prepetition expenses;

(d) the Debtor admits that the budget proposed consulting fees to John Woolley and Jeff Woolley, which the Court did not approve;

(e) the Local Rules provide that the filing of an application to employ a professional within 30 days of the day the case is filed is considered filed contemporaneously with the petition; and

(f) and (g) the Debtor admits the allegations of these subparagraphs and would show that expenses sought and subsequently approved by the Court were needed to keep the Debtor in business.

22.     With respect to paragraph 27, the Debtor admits there was a hearing on November 16, 2020 and denies the remainder of the first sentence. The Debtor admits the allegations of the second sentence but would show that it removed any requests for prepetition and duplicative expenses as stated on the record. The Debtor can neither admit nor deny what troubles Kemin.

23.     With respect to paragraph 28, the Debtor denies that there were any intentional misrepresentations in the Schedules and SOFA. With respect to the subparagraphs, the Debtor states the following:

(a) The referenced consulting agreements are oral, which is why they were not included in the Schedules. The Debtor is amending the Schedules to include these agreements;

(b) The License Agreement, as noted above, is a four way agreement that was never executed by the fourth party, Robson, and thus never went into effect. This is why the License Agreement was not listed. The Debtor will add it as a contested executory contract which the Debtor believes never went into effect.

(c) The Debtor admits that the contracts with Robson are not listed, denies that such omission was intentional and states that it is in the process of amending the Schedules to include these contracts.

(d) As stated on the open record, there is no written agreement between the Debtor and EE-TDF Cleveland LLC. The Debtor will amend the Schedules to include this oral agreement.

(e) The Debtor will amend its Schedules to disclose the existence of any causes of action or contingent claims against any third party.

(f) This negative cash position has been explained on the open record. The Debtor will amend the Schedules to reflect the correct bank balance.

(g) The methodology for the calculations of the book value and the current value of the Debtor's intellectual property was explained on the open record at the meeting of creditors. With such, the Debtor denies it is impossible to verify the accuracy of these statements. In addition to the Subchapter V Trustee, counsel for Kemin, Ara, Robson, Keresa and the Department of Energy were at the meeting, which was conducted by phone. All but counsel for Keresa and the DOE questioned the Debtor's representatives at the meeting. The meeting is being continued because Jeff Wooley, who signed the Schedules and SOFA, had an adverse reaction to a vaccination, was running a high fever and could not be present. Counsel will thus have an additional opportunity to question the Debtor's representatives.

(h) The Debtor will amend the Schedules and SOFA to reflect payment on the "Edelman Short-Term Note". The Debtor was not trying to hide the existence of this note as it was shown on the balance sheet that was filed as part of the §1116 documents that were filed with the petition.

24.     With respect to paragraph 29, the Debtor can neither admit nor deny what concerns Kemin and denies the remainder of the allegations of the first sentence. With respect to the remainder of the paragraph, the Debtor admits that the quotes are accurate.

25.     With respect to paragraph 30, the Debtor can neither admit nor deny that which troubles Kemin or of what Kemin is aware. With respect to the rest of paragraph 30, the Debtor denies that it failed to provide the requested information to the Subchapter V Trustee or that it was incomplete or confusing. The Debtor attempted in good faith to provide the Subchapter V Trustee with the requested financial information in a format that was understandable rather than just doing a document dump. Immediately upon providing the information referenced to the Subchapter V Trustee, the Debtor's representatives and its counsel had a lengthy conversation with the Subchapter V Trustee about the information. The Trustee requested additional information that the Debtor will provide to him.

26.     The Debtor denies that the information that it provided raises a number of red flags regarding the Wooley's ability to act in a fiduciary capacity in connection with this case. With respect to the subparagraphs, the Debtor states the following:

(a) The Debtor denies that it has violated the Company Agreement by obtaining loans from different members and that it was necessary to obtain consent from or provide notice to Kemin regarding such;

(b) The apparent negative balance was explained at the meeting of creditors;

(c) While John Wooley is sometimes referred to as CEO and Jeff Wooley as in-house counsel, they have both been consultants to the Debtor for many

years, including during the times that Kemin and Ara provided funds to the Debtor;

(d) The Debtor can neither admit nor deny what information Kemin has or does not have regarding the transactions in question. If asked, the Debtor will gladly provide whatever information is reasonably necessary to answer Kemin's questions;

(e) EE-TDF Cleveland LLC is a company owned in part by Jeff Wooley and John Wooley which is in the recycling business. The Debtor is one of several hundred of its customers. This was explained on the record at the meeting of creditors;

(f) The Debtor denies the allegations of this subparagraph;

(h) These transactions were explained at the meeting of creditors; and

(i) The SOFA does detail the transfers referenced in this subparagraph. As shown on the SOFA, these payments were for work done and reimbursement of expenses paid on behalf of the Debtor.

27.     With respect to paragraph 32, the Debtor denies all of the allegations therein except that it admits that the partial quotes from the reported cases are accurate. The Debtor would show that Kemin and the other members of the Debtor, which is a Texas limited liability company, have been provided the information that they are entitled to receive under the Company Agreement and the Texas Business Organizations Code. Simply being a member of a Texas entity does not mean that the entity must automatically inform every member in real time about every single transaction or decision that the entity makes or contemplates.

28.    Turning to paragraph 33, the Debtor can neither admit nor deny what Kemin believes and denies the remainder of the allegations in the paragraph. With respect to the last sentence, the Debtor admits the citations are accurate. With respect to obtaining a Super Majority of the Units for an exit from this bankruptcy, the Wooleys and the remaining Unit owners in the Debtor who support the Wooleys remaining in charge of the Debtor and the Debtor in Possession remaining in place represent approximately 2/3rds of the membership Units. Even not counting the membership Units owned or controlled by the Wooleys, the number of Units owned or controlled by parties who support the Wooleys' continued management of the Debtor and the Debtor in Possession remaining in place represent more than enough of the Units to prevent Kemin and its allies from obtaining a 2/3rds vote. How will Kemin et al then obtain a Super Majority?

29.    Debtor's counsel has been in regular communication with the Subchapter V Trustee about this case and the concerns of Kemin et al. Debtor's counsel, representatives of the Debtor and the Subchapter V Trustee have had several lengthy phone conferences.

30.    Since the petition date, the Debtor and Keresa's principals have continued their discussions about expanding Keresa's license to include other products, Keresa funding the construction of a commercial plant in Malaysia, paying the Debtor for engineering services to build and operate such a plant and paying the Debtor a royalty and a portion of the profits from the plant.

31.    The Debtor has been, and continues to be, in serious discussions with several third parties to invest sufficient funds to pay off Ara and fund ongoing operations for an extended period.

32.     All along, the Debtor's path to profitability has been disclosed as being lengthy. As noted above, in its November 2018 Term Sheet, Ara indicated a desire and an intention to invest equity in the Debtor up to $45 million. Ara decided to abruptly stop after funding approximately $3 million from January through August 2020, leaving the Debtor in the lurch. Ara then proposed to the Debtor to create a new entity, transfer the Debtor's assets into that entity (which Ara would fund) and leave the Debtor's existing Unit owners and creditors out in the cold. The Debtor would not go along with this abrupt and last minute scheme. Ara then called its loan and threatened to take the Debtor's IP, which triggered the filing of this case on an emergency basis. The Debtor did not have the luxury of time to deal with this action by Ara; it had to act quickly to preserve its most valuable asset, its intellectual property. The emergency need to file the case necessitated the need to seek funding on an emergency basis while longer term funding is arranged.

33.     Kemin scrutinized the Debtor's budget and funds expended as it doled out its funds under the Unit Purchase Agreement in numerous traunches. During this same period of time, funds were coming in from other investors. Kemin's funds were spent as authorized. Did funds come in from other sources that funded expenditures other than those that Kemin specifically authorized? Yes.

34.     Alan Nalle and John Spencer Cobb, who hold a first lien on the Debtor's real estate and equipment (other than the pilot plant, which is located on the real estate upon which Cobb and Nalle hold a first lien) support the Wooleys remaining in control of the Debtor and the Debtor in Possession remaining in place. Cobb and Nalle are collectively owed approximately $1 million by the Debtor.

35.     What is Kemin's plan if the Debtor in Possession is removed? Where will the funds come from to pay the Debtor's employees, insurance and continued operations? The Motion mentions no funding source or amount. Will the key scientists and employees of the Debtor be willing to remain if there is a change in management after 8 years?  Kemin has not shown that any other member besides Kemin will vote for a Kemin backed plan or management.  Removal of the Debtor in Possession with no plan for funding, no key employee retention or way to obtain a Super Majority of the Units for a Fundamental Business Transaction would be the death knell for the Debtor and its creditors, including even Ara. Kemin is not a creditor and has no pathway to a Super Majority.

WHEREFORE, Debtor prays that the Motion be denied and for such other and further relief to which it may be justly entitled.

Respectfully submitted,


LAW OFFICES OF FRANK B. LYON
3508 Far West Boulevard, Suite 170
Austin, Texas 78731
512.345.8964 / 512.697-0047 (fax)
frank@franklyon.com

By: */s/ Frank B. Lyon*
 FRANK B. LYON
Texas State Bar No. 12739800
ATTORNEY
FOR THE DEBTOR-IN-POSSESSION

## CERTIFICATE OF SERVICE

       This is to certify that a true and correct copy of the foregoing Response was served on the persons named below by the methods and at the addresses indicated on December 2, 2020.
<sub>3</sub>

**United States Trustee**
James Rose – Office of the U.S. Trustee
615 E. Houston St., Rm 533
San Antonio, TX 78205
*ECF notification*

**Subchapter V Trustee**
Eric Terry- Subchapter V Trustee
3511 Broadway
San Antonio, TX 78209
*ECF notification*

**Counsel for Hays County**
Tara LeDay
McCreary, Veselka, Bragg & Allen
PO Box 1269
Round Rock, TX 78680
*ECF notification*

**Counsel for SC Ventures, LLC**
Michael Shaunessy
April Lucas
McGinnis, Lochridge LLP
600 Congress Ave., Ste 2100
Austin, TX 78767
*ECF notification*

**Counsel for the Dept. of Energy**
Zak Balasko
Trial Attorney
U.S. Dept. of Justice
Civil Division, Corp/Fin Litgation Section
*Via email*
*John.z.balasko@usdoj.dov*

**Counsel for Kemin Industries**
Deborah D. Williamson
Dykema Gossett PLLC
112 East Pecan, Ste 1800
San Antonio, TX 78205
*ECF notification*

Lisa Vandesteeg
Levenfeld Pearlstein, LLC
2 N. LaSalle Street, Suite 1300
Chicago, Illinois 60602
*ECF notification*

**Counsel for Ara EER Holdings**
John Melko
Foley & Lardner, LLP
1000 Louisiana, Ste. 2000
Houston, TX 77002
*ECF notification*

**Debtor**
Earth Energy Renewables, LLC
PO Box 2185
Canyon Lake, TX 78133-0009
*via email*
*j wooley1@austin.rr.com*

**Counsel for Keresa Plantation**
Ray Battaglia
Law Offices of Ray Battaglia
66 Granburg Cir.
San Antonio, TX 78218
*ECF notification*

and the attached matrix by first class US mail (except for those parties receiving notice via CM/ECF).

*/ s / Frank B. Lyon*

Label Matrix for local noticing
0542-5
Case 20-51780-rbk
Western District of Texas
San Antonio
Mon Nov 16 10:40:06 CST 2020

Earth Energy Renewables, LLC
Po Box 2185
Attn Jeff Wooley, Manager
Canyon Lake, TX 78133-0009

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

ARA EER Holdings, LLC
5300 Memorial Dr. Ste. 500
Houston, TX 77007-8228

Agilent Technologies
4187 Collections Ce...
Chicago, IL 60693-0001

American Biochemicals
2151 Harvey Mitchell Pkwy S
College Sta, TX 77840-5281

Ara EER Holdings, LLC
c/o John P. Melko
Foley & Lardner LLP
1000 Louisiana Street, Ste. 2000
Houston, TX 77002-5018

Arrow Engineering
260 Pennsylvania Ave
Hillside, NJ 07205-2636

BMWK Group LLC
Po Box 6713
Bryan, TX 77805-6713

Brazos County
Kristeen Roe, Tax A/c
4151 County Park Ct
Bryan, TX 77802-1430

Brazos County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

CardmemberVISA
PO Box 79408
Saint Louis, MO 63179-0408

Carl Frampton
3838 Walden Estates Dr
Montgomery, TX 77356-8917

Concurrencies
Adriaan van Bleijenburgstraat 22
3311LB Dordrechi
Kingdom of the Netherlands

Dunaway/UDG
550 Bailey Ave, Suit...
Fort Worth, TX 76107-2155

Dunn Heat Exchangers, Inc
Po Box 644003
Dallas, TX 75264-4003

EE-TDF Cleveland LLC
1400 S Travis Ave
Cleveland, TX 77327-8403

Eddie Hare
5855 Foster Rd
Bryan, TX 77807-9771

Endress + Hauser, Inc
Dept 78795
Detroit, MI 48278-0795

Feldman Plumbing Company
Po Box 9700
College Sta, TX 77842-7700

First Glendenan Advisors LLC
C/O Andreas Vietor
5128 Applegate Lane
Dallas, TX 75287

Frontier
43218 Business Park Dr Ste 103
Temecula, CA 92590-3601

Global Management Partners
1701 Directors Boulevard Suite 300
Austin, TX 78744-1044

Hamilton Clark Sustainable Cap
1701 Pennsylvania Avenue NW  Suite 200
Washington, DC 20006-5823

Jeffery Wooley
Po Box 2185
Canyon Lake, TX 78133-0009

John Wooley
Po Box 684707
Austin, TX 78768-4707

Kemin Industries, Inc.
c/o Deborah D. Williamson
Dykema Gossett PLLC
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205-1521

Lipid Technologies LLC
1600 19th Ave Sw
Austin, MN 55912-1778

Lowes
3255 Freedom Blvd
Bryan, TX 77802

MCHAM LAW
9414 Anderson Mill Rd
Austin, TX 78729-4428

Norton Rose Fulbright
Po Box 122613
Dallas, TX 75312-2613

O'Keefe IP Counseling
8127 Mesa Dr. B206-62
Austin, TX 78759-8774

Omeara Consulting LLC
407 Sinclair Ave Se
Cedar Rapids, IA 52403-1828


Praxair
Po Box 120812
Dallas, TX 75312-0812

Puffer Sweiven
Po Box 301124
Dallas, TX 75303-1124

S-Con Services Inc
Po Box 394
Bryan, TX 77806-0394


SC Ventures, LLC
c/o Michael A. Shaunessy
600 Congress Avenue, Suite 2100
Austin, TX 78701-2986

Saenz
9155 White Creek Road
College Station, TX 77845-6123

Service Tech
Po Box 1101
Bryan, TX 77806-1101


Steve Robson
c/o Michael A. Shaunessy
600 Congress Avenue, Ste. 2100
Austin, TX 78701-2986

Steven Swanson Consulting LLC
11807 Legend Manor Dr
Houston, TX 77082-3079

Texas A & M University
Dept of Chemistry
Fin Mgmt Ops, AR Dept
6000 Tamu
College Sta, TX 77843-0001


U.S. Bank NA dba Elan Financial Services
Bankruptcy Department
PO Box 108
Saint Louis MO 63166-0108

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539

VWR International LLC
PO Box 640169
Pittsburgh, PA 15264-0169


Williams Scotsman, Inc
Po Box 91975
Chicago, IL 60693-1975

Zeep Incorporated
13505 Galleria Cir Ste W-200
Austin, TX 78738

Eric Terry
Eric Terry Law, PLLC
3511 Broadway
San Antonio, TX 78209-6513


Frank B. Lyon
Two Far West Plaza #170
3508 Far West Blvd.
Austin, TX 78731-3080

End of Label Matrix
Mailable recipients     48
Bypassed recipients      0
Total                   48

<span style="color:red">**PROPOSED ORDER**</span>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 20-51780-RBK** |
| **EARTH ENERGY RENEWABLES, LLC** | § | |
| | § | **CHAPTER 11** |
| | § | **SUBCHAPTER V** |
| **DEBTOR** | § | |

**ORDER GRANTING DEBTOR'S MOTION FOR LEAVE OF COURT TO FILE RESPONSE TO MOTION OF KEMIN INDUSTRIES TO REMOVE DEBTOR-IN-POSSESSION**

On the date shown above, at San Antonio, Texas, came before the Court for consideration the Debtor's Motion for Leave of Court to File Its Response (the "Response") to the Motion of Kemin Industries, Inc. for Removal of the Debtor-in-Possession. The Court finds that said Motion should be, and hereby is, GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Debtor may file

the Response attached to the Motion as Exhibit 1.

# # #

This Order was prepared and submitted by
Frank B. Lyon
Two Far West Plaza, Suite 170
Austin, Texas 78731
512-345-8964 / Fax 512-647-0047
frank@franklyon.com