**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 20-51780-RBK** |
| **EARTH ENERGY RENEWABLES, LLC** | § | |
| | § | **CHAPTER 11** |
| | § | **SUBCHAPTER V** |
| **DEBTOR** | § | |

**DEBTOR'S MOTION TO INCUR SECURED DEBT**
**PURSUANT TO 11 U.S.C. § 364(C)**

TO THE HONORABLE RONALD B. KING, CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COMES EARTH ENERGY RENEWABLES, LLC, the Debtor-in-Possession in the above entitled and numbered Chapter 11, Subchapter V proceeding ("Debtor"), and files this its first motion seeking the authority of the Court to incur secured debt under 11 U.S.C. § 364(c). In support of such requested relief, the Debtor would respectfully show the Court the following:

SUMMARY OF RELIEF REQUESTED

The Debtor seeks authority to incur secured debt in the amount of $675,000.00 to fund its business operations from December 1, 2020 through confirmation of the Debtor's Chapter 11 Plan likely to be by February 28, 2021, and further seeks permission to grant to the lender a first lien on property of the estate pursuant to section 364(c)(2) and a junior lien on property of the estate pursuant to section 364(c)(3). Section 364(c)(2) and (3) provides as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt---
>
> (2) secured by a lien on property of the state that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. Sec. 364(c)(3).

Debtor is also currently in negotiations with several entities who have expressed a sincere interest in funding between $12 and $13 million to Debtor as part of its plan of reorganization which will allow the Debtor to pay off Ara EER Holdings, LLC in full on its secured claim and also fund operations of the Debtor for several years following confirmation of the Debtor's plan.

## BACKGROUND AND ARGUMENT

1.     These Chapter 11, Subchapter V proceedings were commenced by voluntary petition filed on October 20, 2020 (the "Petition Date").  At this time, the Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.  The Debtor has all of the rights, duties and powers of a trustee under § 1106 of the Bankruptcy Code, except as limited by 11 U.S.C. § 1107(a).

2.     The Debtor is a Texas limited liability company in the bio-chemical business and employs engineers, technicians, support staff and management.

3.     The Debtor is requesting to borrow $675,0000 from EER DIP Group ("Lender") pursuant to a promissory note secured by a first and second lien on certain of Debtor's furniture, fixtures and equipment as well as intellectual property ("Note").  The proposed financing of $675,000.00 would fully fund the Debtor's essential expenses for the period December 1, 2020 through February 28, 2021 as shown in the Budget attached hereto as Exhibit 1, along with a cushion of approximately $7,500.00.  This Note is favorable to the Debtor.  The interest rate is 8% per annum.  The loan is due the earlier of 6 months from the date of first funding or one month following entry of a final order confirming the Debtor's plan.  There are no origination fees or "points," and the loan may be repaid at any time before maturity without penalty.  The Note is secured by Debtor's Pilot Plant, all personal property, furniture, fixtures and equipment and intellectual property; provided however, that the interest of Lender shall be junior and

subordinate to the existing security interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC.

4.  By Order entered October 30, 2020, this Court granted the Debtor's Motion for Authority to Incur Unsecured Debt in the amount of $60,000.00 to cover the October 31, 2020 payroll. Debtor filed its Second Motion to Incur Unsecured Debt Pursuant to 11 U.S.C. Sec. 364(b) on November 15, 2020 requesting to incur $240,000 of unsecured debt to cover bi-monthly payroll along with associated payroll taxes and other essential expenses.  On the record on November 16, 2020, the Court authorized unsecured borrowing to cover $105,873.72 of expenses in connection with this Second Motion.  On November 30, 2020, the Court on the record granted on an Interim Basis the Debtor's Motion for Authority to Incur Unsecured Debt with conditions.  A Second Interim Order was entered on December 7, 2020. This Second Interim Order acknowledges that certain of this funding is critical to the operation of the Debtor's business and to the Debtor's reorganization efforts. The Debtor is being allowed to execute an unsecured promissory note in the amount of $170,000; provided that the lender may only accrue interest on $166,332.82 - the expenses approved on the open record.   Both these unsecured debts are *not* being treated as administrative expenses claims under 11 U.S.C. Sec. 503(b)(1).

5.  It is critical to the operation of the Debtor's business, and to the Debtor's reorganization efforts that it be permitted to continue to fund its expenses.  The current funds will be used to pay for Debtor's operational expenses and for administration of this case, including rent, payroll, utilities, supplies and professional fees.  No party has a lien in any loan proceeds to be received by the Debtor.  More specifically, the Debtor will use the Note proceeds to pay the expenses as set forth in the Budget attached as Exhibit 1.

6.  EER DIP Group, the Lender, is comprised of 13 individuals and an IRA.    The named parties who have an interest in the EER DIP Group are specifically set forth in the Intercreditor

Agreement attached as Exhibit 4 to this Motion. See Intercreditor Agreement, Page 1—Parties. This loan will be secured by a first lien on the Debtor's "Pilot Plant" which is property of the estate that is not otherwise currently subject to a lien and junior liens on the following property property of the estate that is subject to first liens: all of the Debtor's personal property, including its furniture, fixtures, equipment and intellectual property. Note that the "Pilot Plant" sits on real estate that is currently liened, however, the Pilot Plant itself is not subject to any liens.

7. **The terms of the secured proposed loan are as follows:**

| Term | Description | Location in Note |
|------|-------------|------------------|
| Principal amount | $675,000.00 | Page 1, ("Principal Amount") |
| Interest Rate | 8% per annum (default rate: 18.0%) | Page 1, ("Annual Interest Rate") Page 1, ("Annual Interest Rate On Matured Unpaid Amounts") |
| Maturity Date | Principal and any accrued and unpaid interest is due and payable on the earlier of six (6) months from first funding or one (1) month following entry of a final order confirming Debtor's Plan of Reorganization. | Page 1, ("Terms of Payment") |
| Security | First lien on Pilot Plant; Second lien on all personal Property including F, F & E And intellectual property | Page 1, paragraph 8 ("Security for Payment") |

8. Several parties have previously objected to the Debtor borrowing additional funds on an unsecured basis under the conditions set forth in section 364(b) of the Code. Section 364(c) allows a post-petition lender to be granted a lien on estate property that is not subject to any liens or granted junior liens on estate property if the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense. The Debtor has already

obtained loans on an unsecured basis and is unable to obtain any additional loans on such basis at this time. The Lender here is willing to provide a secured loan to Debtor pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code.

10.     Attached as Exhibits 2, 3 and 4 are the proposed form of Promissory Note, Security Agreement and Intercreditor Agreement.  The Lender is a group of individuals and an IRA whose relationships are governed by the Intercreditor Agreement.

11.     **Disclosure of Interests.**  Twelve of the fourteen members of the EER DIP Group own Units in the Debtor. Jeffrey Wooley and John Wooley are the Managers of the Debtor and also own membership interests in the Debtor. Jeffrey Wooley owns 1,908,363 membership units in the Debtor. John Wooley owns 1,908,363 membership units in the Debtor. Together, they control an additional 104,165 membership units in the Debtor. The Debtor owes Jeffrey Wooley $153,716.97 and John Wooley $134,156.21. The budget in Exhibit 1 proposes to pay Jeff Wooley and John Wooley one half ($8,750) of their normal consulting fees of $17,500.00 each. Mark Edelman owns 158,546 membership Units through the Gary Edelman Trust, David Craig 100,000 Units, Gerald Gertsner 63,000 Units through the Gerald Gertsner Trust, Jack Goralink 76,462 Units, Mary Zahner 6,500 Units, Peter Hempken 50,000 Units, Ted Bauer 99,965 Units, J. Tim O'Meara 200,000 Units, Paul Fouts 36,815 Units and Gary Sundberg 65,385 Units. Alan Nalle, together with John Spencer Cobb (who is not part of the EER DIP Group) hold a first lien on the Debtor's real estate and a first lien on the Debtor's personal property, except for US Patent 10,662,447. The Debtor is also indebted to Mr. Edelman in the amount of $170,000, to Mr. Craig in the amount of $25,000.00, to Mr. Gerstner in the amount of $10,000.00, to Ms. Zahner in the amount of $5,000.00, to Mr. Hempken in the amount of $25,0000.00, to Mr. O'Meara in the amount of $85,000.00 and to Mr. Nalle in the amount of $482,023.73.  Exhibit 1 proposes to pay Mr. O'Meara one half ($2,500) of his usual monthly consulting fee.

12. For the reasons noted above, the Debtor has an immediate post-petition need to use the proceeds of the loan.  The Debtor cannot maintain the value of its estate during the pendency of the Chapter 11 case without access to liquidity.

13.  The Debtor requests that the Court hold and conduct a hearing to consider entry of an Interim Order authorizing the Debtor, from and after entry of the Interim Order until the Final Hearing, to receive initial funding under the loan.  This relief will enable the Debtor to preserve and maximize value, and therefore avoid immediate and irreparable harm to its estate and all parties in interest, pending the Final Hearing.

WHEREFORE, PREMISES CONSIDERED, the Debtor prays that the Court, after notice and a hearing, enter an order allowing the Debtor to incur secured debt in the amount of $675,000.00 as set forth above and granting such other and further relief to which the Debtor might show itself to be entitled.

Dated: December 8, 2020.

Respectfully submitted,
  /s/ Frank B. Lyon
Frank B. Lyon
Texas Bar No. 12739800
TWO FAR WEST PLAZA, Suite 170
Austin, Texas 78731
512-345-8964 / Fax 512-647-0047
frank@franklyon.com

ATTORNEY FOR THE DEBTOR IN POSSESSION,
EARTH ENERGY RENEWABLES, LLC

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion was served on the persons named below by the methods and at the addresses indicated on December 8, 2020

**United States Trustee**
James Rose – Office of the U.S. Trustee
615 E. Houston St., Rm 533
San Antonio, TX 78205
*ECF notification*

**Subchapter V Trustee**
Eric Terry- Subchapter V Trustee
3511 Broadway
San Antonio, TX 78209
*ECF notification*

**Counsel for Hays County**
Tara LeDay
McCreary, Veselka, Bragg & Allen
PO Box 1269
Round Rock, TX 78680
*ECF notification*

**Counsel for SC Ventures, LLC**
Michael Shaunessy
April Lucas
McGinnis, Lochridge LLP
600 Congress Ave., Ste 2100
Austin, TX 78767
*ECF notification*

**Counsel for the Dept. of Energy**
Zak Balasko
Trial Attorney
U.S. Dept. of Justice
Civil Division, Corp/Fin Litgation Section
*Via email*
John.z.balasko@usdoj.dov

**Counsel for Kemin Industries**
Deborah D. Williamson
Dykema Gossett PLLC
112 East Pecan, Ste 1800
San Antonio, TX 78205
*ECF notification*

Lisa Vandesteeg
Levenfeld Pearlstein, LLC
2 N. LaSalle Street, Suite 1300
Chicago, Illinois 60602
*ECF notification*

**Counsel for Ara EER Holdings**
John Melko
Foley & Lardner, LLP
1000 Louisiana, Ste. 2000
Houston, TX 77002
*ECF notification*

**Debtor**
Earth Energy Renewables, LLC
PO Box 2185
Canyon Lake, TX 78133-0009
*via email*
j wooley1@austin.rr.com

**Counsel for Keresa Plantation**
Ray Battaglia
Law Offices of Ray Battaglia
66 Granburg Cir.
San Antonio, TX 78218
*ECF notification*

and the attached matrix by first class US mail (except for those parties receiving notice via CM/ECF).

I further certify that as soon as I have obtained a hearing date and time from the Court for the hearing on the Motion to Incur Secured Debt under 11 U.S.C. § 364(c), I will serve copies of the Notice of hearing on said Motion upon all parties entitled to notice under the local rules of this Court, and that I will serve all such parties, including any affected creditor, with notice of the time, and date of such hearing and the means to participate in such hearing remotely, and that

promptly thereafter I will file a Certificate of Service to identify the parties served and the means by which they were served.

*/ s /  Frank B. Lyon*
Frank B. Lyon

Label Matrix for local noticing
0542-5
Case 20-51780-rbk
Western District of Texas
San Antonio
Mon Nov 16 10:40:06 CST 2020

Earth Energy Renewables, LLC
Po Box 2185
Attn Jeff Wooley, Manager
Canyon Lake, TX 78133-0009

U.S. BANKRUPTCY COURT
615 E. HOUSTON STREET, ROOM 597
SAN ANTONIO, TX 78205-2055

ARA EER Holdings, LLC
5300 Memorial Dr. Ste. 500
Houston, TX 77007-8228

Agilent Technologies
4187 Collections Ce...
Chicago, IL 60693-0001

American Biochemicals
2151 Harvey Mitchell Pkwy S
College Sta, TX 77840-5281

Ara EER Holdings, LLC
c/o John P. Melko
Foley & Lardner LLP
1000 Louisiana Street, Ste. 2000
Houston, TX 77002-5018

Arrow Engineering
260 Pennsylvania Ave
Hillside, NJ 07205-2636

BMWK Group LLC
Po Box 6713
Bryan, TX 77805-6713

Brazos County
Kristeen Roe, Tax A/c
4151 County Park Ct
Bryan, TX 77802-1430

Brazos County
c/o Tara LeDay
P.O. Box 1269
Round Rock, TX 78680-1269

CardmemberVISA
PO Box 79408
Saint Louis, MO 63179-0408

Carl Frampton
3838 Walden Estates Dr
Montgomery, TX 77356-8917

Concurrencies
Adriaan van Bleijenburgstraat 22
3311LB Dordrechi
Kingdom of the Netherlands

Dunaway/UDG
550 Bailey Ave, Suit...
Fort Worth, TX 76107-2155

Dunn Heat Exchangers, Inc
Po Box 644003
Dallas, TX 75264-4003

EE-TDF Cleveland LLC
1400 S Travis Ave
Cleveland, TX 77327-8403

Eddie Hare
5855 Foster Rd
Bryan, TX 77807-9771

Endress + Hauser, Inc
Dept 78795
Detroit, MI 48278-0795

Feldman Plumbing Company
Po Box 9700
College Sta, TX 77842-7700

First Glendenan Advisors LLC
C/O Andreas Vietor
5128 Applegate Lane
Dallas, TX 75287

Frontier
43218 Business Park Dr Ste 103
Temecula, CA 92590-3601

Global Management Partners
1701 Directors Boulevard Suite 300
Austin, TX 78744-1044

Hamilton Clark Sustainable Cap
1701 Pennsylvania Avenue NW Suite 200
Washington, DC 20006-5823

Jeffery Wooley
Po Box 2185
Canyon Lake, TX 78133-0009

John Wooley
Po Box 684707
Austin, TX 78768-4707

Kemin Industries, Inc.
c/o Deborah D. Williamson
Dykema Gossett PLLC
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205-1521

Lipid Technologies LLC
1600 19th Ave Sw
Austin, MN 55912-1778

Lowes
3255 Freedom Blvd
Bryan, TX 77802

MCHAM LAW
9414 Anderson Mill Rd
Austin, TX 78729-4428

Norton Rose Fulbright
Po Box 122613
Dallas, TX 75312-2613

O'Keefe IP Counseling
8127 Mesa Dr.  B206-62
Austin, TX 78759-8774

Omeara Consulting LLC
407 Sinclair Ave Se
Cedar Rapids, IA 52403-1828

Praxair
Po Box 120812
Dallas, TX 75312-0812

Puffer Sweiven
Po Box 301124
Dallas, TX 75303-1124

S-Con Services Inc
Po Box 394
Bryan, TX 77806-0394

SC Ventures, LLC
c/o Michael A. Shaunessy
600 Congress Avenue, Suite 2100
Austin, TX 78701-2986

Saenz
9155 White Creek Road
College Station, TX 77845-6123

Service Tech
Po Box 1101
Bryan, TX 77806-1101

Steve Robson
c/o Michael A. Shaunessy
600 Congress Avenue, Ste. 2100
Austin, TX 78701-2986

Steven Swanson Consulting LLC
11807 Legend Manor Dr
Houston, TX 77082-3079

Texas A & M University
Dept of Chemistry
Fin Mgmt Ops, AR Dept
6000 Tamu
College Sta, TX 77843-0001

U.S. Bank NA dba Elan Financial Services
Bankruptcy Department
PO Box 108
Saint Louis MO 63166-0108

United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
PO Box 1539
San Antonio, TX 78295-1539

VWR International LLC
PO Box 640169
Pittsburgh, PA 15264-0169

Williams Scotsman, Inc
Po Box 91975
Chicago, IL 60693-1975

Zeep Incorporated
13505 Galleria Cir Ste W-200
Austin, TX 78738

Eric Terry
Eric Terry Law, PLLC
3511 Broadway
San Antonio, TX 78209-6513

Frank B. Lyon
Two Far West Plaza #170
3508 Far West Blvd.
Austin, TX 78731-3080

End of Label Matrix
Mailable recipients    48
Bypassed recipients     0
Total                  48

# EXHIBIT 1

**Earth Energy Renewables LLC 20-51780-rbk**
**OnGoing Post Chapter V Cash & Budget**
**11/1/2020 - 2/28/2021**

| Date | Item | Shareholder Loans | Difference from original estimate | Budgeted Expenses |
|---|---|---|---|---|
| | **11/01-11/15 Budget** | | | |
| | | | | |
| 11/13/20 | Loan Edelman | $  170,000.00 | | |
| 11/20/20 | Teksys Net (Computers & Internet) -original estimate was $1,449.03 | | $      84.54 | $      (1,364.49) |
| 11/16/20 | Expenses (Admin Mgr) | | | $         (105.36) |
| 11/16/20 | Expenses Operations Manager - original estimate was $46.00 | | $     (51.80) | $          (97.80) |
| 11/18/20 | Employer Payroll tax (10/31 Payroll) | | | $      (3,810.38) |
| 11/16/20 | Texas TWC Q3 | | | $          (11.24) |
| 11/13/20 | Frank Lyon - wire transfer | | | $      (3,222.22) |
| 11/23/20 | Pruitt's Frac Tanks (Water Disposal) - original estimate was $1438.25 | | $      38.25 | $      (1,400.00) |
| 11/16/20 | Scarmando Electric -Removed - Determined to be pre-petition | | | |
| 11/16/20 | Consultant Sales & Marketing - Removed - Determined to be pre-petition | | | |
| 11/16/20 | Frank Lyon - funds returned | | | $       3,222.22 |
| 11/16/20 | Wilscot (Rent) - original estimate was $2895.00 | | $       (4.64) | $      (2,899.64) |
| 11/16/20 | Final 10/28/20 insurance payment - moved to 11/30/2020 | | | |
| 11/16/20 | Expenses Carl Frampton (Controller) | | | $      (4,469.65) |
| 11/16/20 | Praxair (Consumeable Gas) - original estimate was $1202.29 | | | $      (1,287.06) |
| 11/20/20 | 2020-21 Insurance Down Payment - original estimate was $5000.00 | | $       (3.00) | $      (5,003.00) |
| 11/16/20 | Testing University of Georgia (Jeff Wooley credit card) - moved to 11/30/20 | | | |
| 11/16/20 | Atmos Energy - Original estimate was $1,500, now $100. Moved to 12/9/20 | | | |
| 11/16/20 | VWR (Supplies) - original estimate was $2,500.00 | | $    1,563.37 | $         (936.63) |
| 11/16/20 | Agilent Maintenance Contract - original estimate was $3600.00 | | $    (296.10) | $      (3,896.10) |
| 11/16/20 | Payroll Gross (Inc Health Reimbursement) | | | $    (67,982.09) |
| 11/18/20 | Employer Payroll Taxes | | | $      (3,806.15) |
| | **First Half of November      Sub-Total** | $  170,000.00 | $  1,330.62 | $    (97,069.59) |
| | | | | |
| 11/30/20 | Insurance D & O and downpayment Balance | | $       (3.00) | $      (6,153.00) |
| 11/30/20 | Employer Payroll tax (11/30 Payroll) | | $          - | $      (4,042.66) |
| 11/30/20 | Gross Payroll | | $          - | $    (58,862.29) |
| 11/30/20 | Final Insurance Payment 10.28.20 | | $          - | $         (208.28) |
| | **Second half of November** | $  170,000.00 | $       (3.00) | $    (69,266.23) |
| | | | | |
| | **November (full month)      Total** | $  170,000.00 | $  1,327.62 | $  (166,335.82) |
| | | | | |
| | **December Budget** | | | |
| | | | | |
| 12/15/20 | DIP Loan Draw | $  170,000.00 | | |
| 12/15/20 | Wilscot (Rent) | | | $      (2,895.00) |
| 12/15/20 | Expenses Juan Zavala | | | $          (50.00) |
| 12/15/20 | Teksys Net (Computers & Internet) | | | $      (1,365.00) |
| 12/15/20 | Praxair (Consumeable Gas) | | | $      (1,500.00) |
| 12/15/20 | VWR (Supplies) | | | $      (2,500.00) |
| 12/15/20 | Wolfgang Verdegall Expenses (Prepetition) | | | $      (4,719.00) |
| 12/15/20 | Atmos Energy | | | $         (100.00) |
| 12/15/20 | VWR (Supplies) | | | $      (2,500.00) |
| 12/15/20 | Jeff Wooley Credit Card Payments (University of Georgia & BTU) | | | $      (8,190.00) |
| 12/15/20 | Carl Frampton* | | | $    (10,000.00) |
| 12/15/20 | Kenneth Rosco (Commercial Development)* | | | $    (12,000.00) |
| 12/15/20 | Michael Bowers (Commercial Development)* | | | $    (20,000.00) |
| 12/15/20 | Bowers Expenses | | | $      (2,000.00) |
| 12/15/20 | Payroll Gross (Inc Health Reimbursement) | | | $    (67,587.29) |
| 12/18/20 | Employer Payroll Taxes | | | $      (3,977.75) |
| 12/15/20 | John Wooley (50%)* | | | $      (8,750.00) |
| 12/15/20 | Jeff Wooley (50%)* | | | $      (8,750.00) |
| 12/15/20 | Tim Omeara (50%)* | | | $      (2,500.00) |
| 12/15/20 | Frank Lyon* | | | $    (15,000.00) |
| 12/15/20 | Outside Lab Product Test | | | $      (7,500.00) |
| 12/24/20 | DIP Loan Draw | $    80,000.00 | | |
| 12/24/20 | BTU | | | $      (3,250.00) |
| 12/31/20 | Gross Payroll | | | $    (55,887.29) |
| 12/31/20 | payroll taxes | | | $      (4,000.00) |

| Date | Item | Shareholder Loans | Difference from original estimate | Budgeted Expenses |
|---|---|---|---|---|
| | December Budget Total | $ 250,000.00 | | $ (245,021.33) |
| | **January 2021 Budget** | | | |
| 1/15/21 | DIP Loan Draw | $ 160,000.00 | | |
| 1/15/21 | Wilscot (Rent) | | | $ (2,895.00) |
| 1/15/21 | Expenses Juan Zavala | | | $ (50.00) |
| 1/15/21 | Monthly Insurance Payment | | | $ (3,500.00) |
| 1/15/21 | Teksys Net (Computers & Internet) | | | $ (1,365.00) |
| 1/15/21 | Praxair (Consumeable Gas) | | | $ (1,500.00) |
| 1/15/21 | VWR (Supplies) | | | $ (1,500.00) |
| 1/15/21 | Carl Frampton Expenses | | | $ (1,500.00) |
| 1/15/21 | Atmos Energy | | | $ (100.00) |
| 1/15/21 | VWR (Supplies) | | | $ (2,500.00) |
| 1/15/21 | Carl Frampton* | | | $ (7,500.00) |
| 1/15/21 | Payroll Gross (Inc Health Reimbursement) | | | $ (67,587.29) |
| 1/18/21 | Employer Payroll Taxes | | | $ (3,977.75) |
| 1/15/21 | John Wooley (50%)* | | | $ (8,750.00) |
| 1/15/21 | Jeff Wooley (50%)* | | | $ (8,750.00) |
| 1/15/21 | Tim Omeara (50%)* | | | $ (2,500.00) |
| 1/15/21 | Frank Lyon* | | | $ (10,000.00) |
| 1/15/21 | Kenneth Rosco (Commercial Development)* | | | $ (12,000.00) |
| 1/15/21 | Michael Bowers (Commercial Development)* | | | $ (20,000.00) |
| 1/31/21 | DIP Loan Draw | $ 65,000.00 | | |
| 1/31/21 | BTU | | | $ (3,250.00) |
| 1/31/21 | Bowers Expenses | | | $ (2,000.00) |
| 1/31/21 | Gross Payroll | | | $ (55,887.29) |
| 1/31/21 | payroll taxes | | | $ (4,000.00) |
| | **January 2021 Budget Total** | $ 225,000.00 | | $ (221,112.33) |
| | **February 2021 Budget** | | | |
| 2/14/21 | DIP Loan Draw | $ 140,000.00 | | |
| 2/15/21 | Wilscot (Rent) | | | $ (2,895.00) |
| 2/15/21 | Expenses Juan Zavala | | | $ (50.00) |
| 2/15/21 | Monthly Insurance Payment | | | $ (3,500.00) |
| 2/15/21 | Teksys Net (Computers & Internet) | | | $ (1,365.00) |
| 2/15/21 | Praxair (Consumeable Gas) | | | $ (1,500.00) |
| 2/15/21 | VWR (Supplies) | | | $ (1,500.00) |
| 2/15/21 | Carl Frampton Expenses | | | $ (1,500.00) |
| 2/15/21 | Atmos Energy | | | $ (100.00) |
| 2/15/21 | VWR (Supplies) | | | $ (1,500.00) |
| 2/15/21 | Carl Frampton* | | | $ (7,500.00) |
| 2/15/21 | Payroll Gross (Inc Health Reimbursement) | | | $ (67,587.29) |
| 2/15/21 | Employer Payroll Taxes | | | $ (3,977.75) |
| 2/15/21 | Tim Omeara (50%)* | | | $ (2,500.00) |
| 2/15/21 | Frank Lyon* | | | $ (15,000.00) |
| 2/15/21 | Kenneth Rosco (Commercial Development)* | | | $ (12,000.00) |
| 2/15/21 | Michael Bowers (Commercial Development)* | | | $ (20,000.00) |
| 2/15/21 | Bowers Expenses | | | $ (1,000.00) |
| 2/27/21 | DIP Loan Draw | $ 60,000.00 | | |
| 2/28/21 | BTU | | | $ (3,250.00) |
| 2/28/21 | Gross Payroll | | | $ (55,887.29) |
| | **February 2021 Budget** | $ 200,000.00 | | $ (202,612.33) |
| | **Totals** | $ 675,000.00 | | $ (668,745.99) |

* Contingent upon Court approval of employment/retention. Timing for payment will be delayed if approval for employment/retention is after scheduled payment date

# EXHIBIT 2

EER DIP
Rev 12-6-20

# Promissory Note

Date:                             , 2020

Borrower:        Earth Energy Renewables LLC, Debtor in Possession

Borrower's Mailing Address:                       Box 2185, Canyon Lake,
                                                  Comal County, Texas   78133

Lender:          EER DIP Group

Place for Payment:        C/O Frank Lyon
                          3508 Far West Blvd.
                          Austin TX 78731

Principal Amount:     $675,000.00

Annual Interest Rate:        8% per annum

Annual Interest Rate on Matured, Unpaid Amounts:        18% per annum.

Terms of Payment (principal and interest):

    All outstanding principal and any accrued and unpaid interest are due and payable on the earlier of six (6) months from first funding or one (1) month following entry of a final order confirming Debtor's plan of reorganization in Case NO. 20-51780-RBK - United States Bankruptcy Court For The Western District of Texas, San Antonio Division.

Prepayment:

    This Note may be prepaid at any time without penalty or charge.

Security for Payment:

    This note is secured by the Pilot Plant constructed by Borrower for the purpose of producing medium chain fatty acids and their derivatives) located at 6150 Mumford Rd. Bryan TX, 77807.

    This note is further secured by the intellectual property of Borrower, provided however, that the interest of Lender shall be junior and subordinate to the interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC.

    Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower

EER DIP
Rev 12-6-20

promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

Notwithstanding any other provision of this note, in the event of a default, before exercising any of Lender's remedies under this note or any deed of trust or security agreement securing it, Lender will first give Borrower written notice of default and Borrower will have ten days after notice is given in which to cure the default. If the default is not cured ten days after notice, Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

Subject to Lenders prior right to convert as set forth above, Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium. In the event Borrower desires to prepay, Borrower shall give Lender 10 days prior notice.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If any provision of this note conflicts with any provision of a loan agreement, deed of trust, or security agreement of the same transaction between Lender and Borrower, the provisions of the loan agreement/deed of trust/security agreement will govern to the extent of the conflict.

2

EER DIP
Rev 12-6-20

*Choice of Law*

       This note will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.

**BORROWER ACKNOWLEDGES THAT THE LENDER HAS MADE NO REPRESENTATION THAT THE LENDER WILL REFINANCE THE INDEBTEDNESS EVIDENCED HEREBY OR EXTEND CREDIT, AT MATURITY OF THIS NOTE OR OTHERWISE, TO BORROWER, ANY GUARANTOR OF THIS NOTE OR ANY OTHER PARTY CONNECTED IN ANY WAY WITH THIS NOTE. THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. ANY AMENDMENT OR MODIFICATION OF THIS NOTE SHALL BE IN WRITING AND SIGNED BY THE PARTY BOUND THEREBY.**

This Note is subject to the approval of the United States Bankruptcy Court For The Western District Of Texas San Antonio Division  - Case NO. 20-51780-RBK.

This Note is subject to the terms of that certain Intercreditor Agreement of even date herewith.

BORROWER
Earth Energy Renewables LLC

By: _____
      Jeffrey J. Wooley
      Manager

# EXHIBIT 3

EER DIP
12-6-20

# Security Agreement

Date: _____, 2020

Debtor:          Earth Energy Renewables :LLC Debtor in Possession

Debtor's Mailing Address:      Box 2185,
                               Canyon Lake, Comal County, Texas 78133

Secured Party:          EER DIP Group

Secured Party's Mailing Address:        C/O Ken Richey
                                        1910 Justin Lane
                                        Austin Texas 78757

Classification of Collateral:   Equipment and General Intangibles

Collateral:

     All of Debtor's interest in the Pilot Plant constructed by Borrower for the purpose of producing medium chain fatty acids and their derivatives) located at 6150 Mumford Rd. Bryan, TX, 77807; and

     All of Debtor's interest in the intellectual property of Borrower, provided however, that the interest of Lender shall be junior and subordinate to the interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC;

     and all replacements, substitutions and proceeds of that property.

Obligation

     That certain Promissory Note of even date herewith in the original principal sum of $675,000.00 from Debtor to Secured Party.

     Other debt/Future advances:    The security interest also secures all other present and future debts and liabilities of Debtor and/or Obligor to Secured Party, including future advances.

Debtor's Representations Concerning Debtor and Locations:

     Debtor's principal place of business: P.O. Box 2185, Canyon Lake, TX 78133
     Pilot Plant: 4150 Mumford Rd., Bryan, Brazos County, TX 77807

     Debtor's federal tax identification number is :        46-1266509

1

EER DIP
12-6-20

Debtor's records concerning the Collateral are located at
Box 2185, Canyon Lake, TX 78133 and
6150Mumford Rd, Bryan TX 77807

Debtor grants to Secured Party a security interest in the Collateral and all its proceeds to secure the Obligation and all renewals, modifications, and extensions of the Obligation. Debtor authorizes Secured Party to file a financing statement describing the Collateral.

## A.    Debtor represents and warrants the following:

1.    No financing statement covering the Collateral is filed in any public office except with respect to U.S. Patent No. 10,662,447.

2.    Debtor owns the Collateral and has the authority to grant this security interest, free from any setoff, claim, restriction, security interest, or encumbrance except liens for taxes not yet due.

3.    All information about Debtor's financial condition is or will be accurate when provided to Secured Party.

4.    An accurate copy of Debtor's Company Agreement has been delivered to Secured Party. There are no changes to the Company Agreement not reflected in the copy delivered to Secured Party.

5.    Debtor has obtained the written consent of all persons required under the Company Agreement or otherwise to authorize the security interest created by this agreement and Secured Party's exercise of its rights hereunder. On request of Secured Party, Debtor will deliver to Secured Party an executed original of that consent.

6.    Granting of the lien contemplated hereunder is subject to approval by the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in Case No. 20-51780-rbk.

## B.    Debtor agrees to—

1.    Defend the Collateral against all claims adverse to Secured Party's interest; pay all taxes imposed on the Collateral; keep the Collateral free from liens, except for liens of record and those in favor of Secured Party or for taxes not yet due; keep the Collateral in Debtor's possession and ownership except as otherwise provided in this agreement; maintain the Collateral in good condition; and protect the Collateral against waste, except for ordinary wear and tear.

2.    Insure the collateral in accord with Secured Party's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage.  Policies will be written in favor

EER DIP
12-6-20

of Debtor and Secured Party according to their respective interests or according to Secured Party's other requirements. All policies will provide that Secured Party will receive at least ten days' notice before cancellation, and the policies or certificates evidencing them will be provided to Secured Party when issued. Debtor assumes all risk of loss and damage to the collateral to the extent of any deficiency in insurance coverage. Debtor irrevocably appoints Secured Party as attorney-in-fact to collect any return, unearned premiums, and proceeds of any insurance on the collateral and to endorse any draft or check deriving from the policies and made payable to the Debtor.

3.      Pay all Secured Party's expenses, including reasonable attorney's fees, incurred to obtain, preserve, perfect, defend, and enforce this agreement or the Collateral and to collect or enforce the Obligation. These expenses will bear interest from the date of advance at the rate stated in the Note for matured, unpaid amounts and are payable on demand at the place where the Obligation is payable. These expenses and interest are part of the Obligation and are secured by this agreement.

4.      Sign and deliver to Secured Party any documents or instruments that Secured Party considers necessary to obtain, maintain, and perfect this security interest in the Collateral.

5.      Notify Secured Party immediately of any event of default and of any material change (a) in the Collateral, (b) in Debtor's Mailing Address, (c) in the location of any Collateral, (d) in any other representation or warranty in this agreement, and (e) that may affect this security interest, and of any change (f) in Debtor's name and (g) of any location set forth above to another state.

6.      Use the Collateral primarily according to the stated classification.

7.      Maintain accurate records of the Collateral at the address set forth above; furnish Secured Party any requested information related to the Collateral; and permit Secured Party to inspect and copy all records relating to the Collateral.

8.      Perform all obligations to be performed by Debtor under the Company Agreement.

9.      Notify Secured Party of any default known to Debtor of any other person under the Company Agreement and of any notice of default given under the Company Agreement.

10.     Enforce the obligations of other persons under the Company Agreement and at Secured Party's request, at Debtor's expense, take action requested by Secured Party to enforce the obligations of other persons and exercise the rights of Debtor under the Company Agreement.

**C.      Debtor agrees not to—**

1.      Sell, transfer, or encumber any of the Collateral without Secured Party's prior, written consent or order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in Case No. 20-51780-rbk.

EER DIP
12-6-20

2.    Change its name or jurisdiction of organization, merge or consolidate with any person, or convert to a different entity without notifying Secured Party in advance and taking action to continue the perfected status of the security interest in the Collateral.

3.    Consent to or approve any modification of the Company Agreement.

4.    Compromise or reduce any payment or distribution to be made to Debtor on the Collateral.

## D.    Secured Party Not Liable

Debtor remains liable under the Company Agreement for all its obligations thereunder. Secured Party has no liability thereunder because of this agreement. Secured Party is not liable, because of this agreement, for any obligation of Debtor under the Company Agreement.

## E.    Default and Remedies

1.    A default exists if—

a.    Debtor, Obligor, or any secondary obligor fails to timely pay or perform any obligation or covenant in any written agreement between Secured Party and any of Debtor, Obligor, or secondary obligor;

b.    any warranty, covenant, or representation in this agreement or in any other written agreement between Secured Party and any of Debtor, Obligor, or secondary obligor is materially false when made;

c.    a receiver is appointed for Debtor, Obligor, any secondary obligor, or any Collateral;

d.    any Collateral is assigned for the benefit of creditors;

e.    a bankruptcy or insolvency proceeding is commenced by Debtor, the Company, a partnership in which Debtor is a general partner, Obligor, or any secondary obligor;

f.    a bankruptcy or insolvency proceeding is commenced against Debtor, the Company, a partnership in which Debtor is a general partner, Obligor, or any secondary obligor, and the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

g.    any of the following parties is dissolved, begins to wind up its affairs, is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the

dissolution or winding up of the affairs of any of the following parties: Debtor; the Company; a partnership of which Debtor is a general partner; Obligor; or any secondary obligor; or

h.    any Collateral is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral of like kind and quality or restored to its former condition.

2.    If a default exists, Secured Party may, subject to order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in Case No. 20-51780-rbk:

a.    demand, collect, convert, redeem, settle, compromise, receipt for, realize on, sue for, and adjust the Collateral either in Secured Party's or Debtor's name, as Secured Party desires, or take control of any proceeds of the Collateral and apply the proceeds against the Obligation;

b.    take possession of any Collateral not already in Secured Party's possession, without demand or legal process, and for that purpose Debtor grants Secured Party the right to enter any premises where the Collateral may be located;

c.    without taking possession, sell, lease, or otherwise dispose of the Collateral at any public or private sale in accordance with law;

d.    exercise any rights and remedies granted by law or this agreement;

e.    notify obligors on the Collateral to pay Secured Party directly;

f.    as Debtor's agent, make any endorsements in Debtor's name and on Debtor's behalf of any proceeds of the Collateral; and

g.    exercise and enforce all rights, including voting rights, available to an owner of the Collateral.

3.    Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms of this agreement. Secured Party may exercise all remedies at the same or different times, and no remedy is a defense to any other. Secured Party's rights and remedies include all those granted by law and those specified in this agreement.

4.    Secured Party's delay in exercising, partial exercise of, or failure to exercise any of its remedies or rights does not waive Secured Party's rights to subsequently exercise those remedies or rights. Secured Party's waiver of any default does not waive any other default by Debtor. Secured Party's waiver of any right in this agreement or of any default is binding only if

EER DIP
12-6-20

it is in writing. Secured Party may remedy any default without waiving it.

5.     Secured Party has no obligation to clean or otherwise prepare the Collateral for sale.

6.     Secured Party has no obligation to collect any of the Collateral and is not liable for failure to collect any of the Collateral, for failure to preserve any right pertaining to the Collateral, or for any act or omission on the part of Secured Party or Secured Party's officers, agents, or employees, except willful misconduct.

7.     Secured Party has no obligation to satisfy the Obligation by attempting to collect the Obligation from any other person liable for it. Secured Party may release, modify, or waive any collateral provided by any other person to secure any of the Obligation. If Secured Party attempts to collect the Obligation from any other person liable for it or releases, modifies, or waives any collateral provided by any other person, that will not affect Secured Party's rights against Debtor. Debtor waives any right Debtor may have to require Secured Party to pursue any third person for any of the Obligation.

8.     If Secured Party must comply with any applicable state or federal law requirements in connection with a disposition of the Collateral, such compliance will not be considered to adversely affect the commercial reasonableness of a sale of the Collateral.

9.     Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim any warranties of title or the like. This procedure will not be considered to adversely affect the commercial reasonableness of a sale of the Collateral.

10.     If Secured Party sells any of the Collateral on credit, Debtor will be credited only with payments actually made by the purchaser and received by Secured Party for application to the indebtedness of the purchaser. If the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor will be credited with the proceeds of the sale.

11.     If Secured Party purchases any of the Collateral being sold, Secured Party may pay for the Collateral by crediting the purchase price against the Obligation.

12.     Secured Party has no obligation to marshal any assets in favor of Debtor or against or in payment of the Note, any of the Other Obligation[s], or any other obligation owed to Secured Party by Debtor or any other person.

13.     If the Collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth and all prerequisites to the sale specified by this agreement and by law will be presumed satisfied.

**F.     General**

1.     Notice is reasonable if it is mailed, postage prepaid, to Debtor at Debtor's Mailing

EER DIP
12-6-20

Address at least ten days before any public sale or ten days before the time when the Collateral may be otherwise disposed of without further notice to Debtor.

2.  This security interest will neither affect nor be affected by any other security for any of the Obligation. Neither extensions of any of the Obligation nor releases of any of the Collateral will affect the priority or validity of this security interest.

3.  This agreement binds, benefits, and may be enforced by the successors in interest of Secured Party and will bind all persons who become bound as debtors to this agreement. Assignment of any part of the Obligation and Secured Party's delivery of any part of the Collateral will fully discharge Secured Party from responsibility for that part of the Collateral. If such an assignment is made, Debtor will render performance under this agreement to the assignee. Debtor waives and will not assert against any assignee any claims, defenses, or setoffs that Debtor could assert against Secured Party except defenses that cannot be waived. All representations, warranties, and obligations are joint and several as to each Debtor.

4.  This agreement may be amended only by an instrument in writing signed by Secured Party and Debtor.

5.  The unenforceability of any provision of this agreement will not affect the enforceability or validity of any other provision.

6.  This agreement will be construed according to Texas law, without regard to choice-of-law rules of any jurisdiction.

7.  Interest on the Obligation secured by this agreement will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the Obligation or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the Obligation or, if the principal of the Obligation has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the Obligation.

8.  In no event may this agreement secure payment of any debt subject to title IV of the Texas Finance Code or create a lien otherwise prohibited by law.

9.  When the context requires, singular nouns and pronouns include the plural.

EER DIP
12-6-20

    10.     Any term defined in sections 1.101 to 11.108 of the Texas Business and
Commerce Code and not defined in this agreement has the meaning given to the term in the
Code.

This Security Agreement and the Note secured hereby is subject to the approval of the United
States Bankruptcy Court For The Western District Of Texas San Antonio Division  - Case NO.
20-51780-RBK.

This Security Agreement and the Note secured hereby is subject to the terms of that certain
Intercreditor Agreement of even date herewith.


    DEBTOR
    Earth Energy Renewables LLC,
    Debtor in Possession

    By: _____
    Jeffrey J. Wooley, Manager

# EXHIBIT 4

12-6-20
DIP EER

# Intercreditor Agreement

**Date**:              _____, 2020

**Parties**:          The Parties listed below have an interest in the Obligations in the percentages set forth next to their names:

| Participant | Percentage |
|---|---|
| | |
| BOOTRUST – Custodian FBO Mark A Edelman Traditional IRA | 11.11% |
| David Craig | 3.70% |
| Gerald Gerstner | 4.44% |
| Jack Goralink | 2.96% |
| Mary Zahner | 1.48% |
| Peter Hempken | 3.70% |
| Ted Bauer | 0.74% |
| J Tim O'Meara | 2.96% |
| Paul Fouts | 4.44% |
| Greg Sundberg | 3.70% |
| Stuart Shaw | 29.63% |
| Alan Nalle | 8.52% |
| John C Wooley, Jeffrey J Wooley | 22.59% |

**Collateral**:     Rights of the Parties to the property listed below as more particularly described in the documentation for Borrower's respective Obligations to each Party:

All of Debtor's interest in the Pilot Plant constructed by Borrower for the purpose of producing medium chain fatty acids and their derivatives) located at 6150 Mumford Rd. Bryan, TX, 77807; and

All of Debtor's interest in the intellectual property of Borrower, provided however, that the interest of Lender shall be junior and subordinate to the interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC.

and all replacements, substitutions and proceeds of that property.

**Obligations**:   That certain Promissory Note of even date herewith in the original principal sum of $675,000.00 from Earth Energy Renewables LLC ("Debtor") to EER DIP Group ("Secured Party").

1

12-6-20
DIP EER

It is expressly agreed that Alan Nalle, and John Spencer Cobb are the holders of other Notes from Debtor which are secured by liens including a Deed of Trust on the real property on which the Piot Plant referred to above is located and on the Intellectual Property which are not a part of this intercreditor Agreement.


**Borrower**:      Earth Energy Renewables LLC, Debtor in Possession


The Parties acknowledge that their respective ownership of the Obligations are of equal dignity and are all secured by security interests in the collateral.


The Parties hereby agree that they will each notify the other of any defaults concerning the Obligations and that they will cooperate with regard to any action taken against the Collateral.


The general terms and conditions set forth in Exhibit A (the "General Terms and Conditions") are incorporated into these Terms and Conditions by reference in their entirety.  If there is a conflict between these Terms and Conditions and the General Terms and Conditions, these Terms and Conditions shall govern.  Unless defined in these Terms and Conditions, capitalized terms used in the General Terms and Conditions shall have the meanings ascribed to them in these Terms and Conditions.

**Governance**

The Parties hereby agree that all decisions regarding the Collateral and any action to be taken regarding it shall be made by all the Parties as a group. The Parties further agree that no individual action regarding the Collateral shall be allowed and that any such individual action shall be void.


The parties acknowledge that Mark Edelman ( hereinafter "Lead Lender") is hereby designated by the Lenders as the lead lender and shall have all of the rights and privileges set forth in this agreement. Notwithstanding any other provision of this agreement it is understood and agreed by the parties that Lead Lender is to be the lead lender with regard to all decisions made by the Lenders as a group and shall accordingly have a 51% voting majority on any decisions which the Parties make as a group. To the extent of making any decision for which a vote of the remaining Lenders is necessary, as between themselves the remaining Lenders shall be entitled to one vote for each dollar advanced.


This Agreement, the Security Agreement and the Note secured thereby are subject to the approval of the United States Bankruptcy Court For The Western District Of Texas San Antonio Division  - Case NO. 20-51780-RBK.


Signature Page Follows

2

12-6-20
DIP EER

The Participants may execute this Agreement in counterparts by signing a signature page in the form set out below.

Intercreditor Agreement Signature Page

The undersigned hereby agrees to participate in the intercreditor agreement dated _____ regarding the EER DIP Group in the following amount$ _____.

Signature: _____

Printed Name: _____

Address: _____

          _____

          _____

Telephone: _____

Email: _____

Date: _____

12-6-20
DIP EER

## Exhibit A

### General Terms and Conditions

**Information Sharing.**

In the event that either Party shall receive possession or control of any books and records which contain information identifying or pertaining to any of the Collateral or the Borrower in which the other Party has been granted a lien, it shall notify the other Party that it has received such books and records and shall, as promptly as practicable thereafter, make available to the other Party duplicate copies of such books and records in the same form as the original. The failure of either Party to share information shall not create a cause of action against the Party failing to share information.

**Notices of Defaults.**

The Parties agree to endeavor to give to the other copies of any notice of the occurrence of a default, respectively, simultaneously with the sending of such notice to Borrower, but the failure to do so shall not affect the validity of such notice or create a cause of action against the Party failing to give such notice or create any claim or right on behalf of any third party. The sending or receipt of such notice shall not obligate the recipient to cure such default.

**Distribution of Collateral**

All proceeds of Collateral resulting from any enforcement action, the closing of the sale of any of the Collateral or hazard or other insurance claims when, in any such case, a default or event of default has occurred and is then continuing shall be distributed in accordance with ratio of the outstanding obligations to each Party.

**Modifications and Waivers.**

Any modification or waiver of any provision of this Agreement, or any consent to any departure by either Party from the terms hereof, shall not be effective in any event unless the same is in writing and signed by the Parties, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given.

**Amendments to Financing Arrangements or to this Agreement.**

The Parties shall each endeavor to notify the other Party of any material amendment or modification of their respective loan documents, but the failure to do so shall not create a cause of action against the Party failing to give such notice or create any claim or right on behalf of the other Party. The Parties shall, upon request of the other Party, provide copies of all such modifications or amendments and copies of all other documentation relevant to the Collateral.

4

12-6-20
DIP EER

## Rights to Purchase

In the event of a default by Borrower if either party as an alternative to enforcing the obligation shall have the right, exercisable by written notice given not later than thirty (30) days after the date of delivery of a notice of default to purchase the Obligation of the other Party and all of the right, title and interest of other Party for a purchase price equal to the amount that would be required to cause the non exercising Party's Obligation to be paid in full as of the closing date.

## General

(a)   No warranties of any kind are given with respect to the Obligations disclosed under this Agreement or any use thereof, except as may be otherwise agreed in writing.

(b)   This Agreement will not create any obligation on the part of a party to enter into a business relationship with the other party other than a expressed herein.  Nothing in this Agreement will be construed as creating a joint venture, partnership or employment relationship.

(c)   This Agreement is not assignable and is personal to the parties except with the prior written consent of the other party.

(d)   This Agreement supersedes all prior discussions and writings, and constitutes the entire agreement between the parties, with respect to the subject matter hereof. No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in enforcing any right will be deemed a waiver.

(e)   Each of the parties will from time to time execute and deliver all such further documents and instruments and do all acts and things as the other party may reasonably require in order to effectively carry out, better document, or perfect the full intent and meaning of this Agreement.

(f)   In the event that any of the provisions of this Agreement will be held by a court or other tribunal of competent jurisdiction to be unenforceable, the remaining portions hereof will remain in full force and effect.

(g)   The substantive laws of the State of Texas (and not its conflicts of law principles or any conflicting provision or rule that would require the law of any other jurisdiction be applied) govern all matters arising out of, or relating to, this Agreement and all of the transactions it contemplates, including without limitation its validity, interpretation, construction, performance and enforcement;

(h)   Headings are solely for convenience of reference and are not part of, and may not be used to construe, this Agreement. Terms in the singular shall include terms in the plural and vice-versa.  The term "or" is used in the inclusive sense and means "and/or" unless otherwise specified.

(i)   Notices. Any notice required or desired to be served, given or delivered hereunder shall be in writing (including facsimile or email transmission), and shall be deemed to have been

5

12-6-20
DIP EER

validly served, given or delivered upon the earlier of (a) personal delivery to the address set forth below; (b) in the case of mailed notice, five (5) days after deposit in the United States mails, with proper postage for certified mail, return receipt requested, prepaid, or in the case of notice by Federal Express or other reputable overnight courier service, one (1) Business Day after delivery to such courier service; and (c) in the case of facsimile transmission, upon transmission with confirmation of receipt, in any such case addressed to the party as set forth below.

<p style="color:red; text-align:center;">**PROPOSED ORDER**</p>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 20-51780-RBK** |
| **EARTH ENERGY RENEWABLES, LLC** | § | |
| | § | **CHAPTER 11** |
| | § | **SUBCHAPTER V** |
| **DEBTOR** | § | |

**ORDER GRANTING DEBTOR'S MOTION TO INCUR SECURED DEBT**
**PURSUANT TO 11 U.S.C. § 364(C)**

On this day, at San Antonio, Texas, came before the Court for expedited hearing the Debtor's Motion to Incur Secured Debt pursuant to 11 U.S.C. § 364(c) (the "Motion"), filed in this Chapter 11 proceeding by the Debtor-in-Possession, Earth Energy Renewables, LLC, (the "Debtor").  The Debtor appeared through its attorney of record, Frank B. Lyon.  Other parties in interest appeared, as announced on the record in open Court.

1

The Court finds, based upon the representations of Debtor's counsel, that notice is proper in that a copy of the Motion, together with notice of the time, date and place of the expedited hearing on the Motion, was served upon each of the parties entitled to notice under Title 11, United States Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.  The Court further finds that no objections to the Motion were filed by any person and no party appeared in opposition to the Motion.

Having considered the Motion and the evidence and arguments of counsel, the Court finds: that the Motion is proper; that it is critical to the operation of the Debtor's business, and to the Debtor's reorganization efforts, that it be permitted to incur secured debt pursuant to 11 U.S.C. § 364(c)(2) and (3) in the amount of $675,000.00 on the terms that are set forth in the Motion.

IT IS THEREFORE ORDERED that the Motion is hereby GRANTED, and the Debtor is hereby authorized to incur secured debt pursuant to 11 U.S.C. § 364(c)(2) and (3) on the forms attached hereto as Exhibit A.

<div align="center"># # #</div>

This Order was prepared and submitted by
Frank B. Lyon
TWO FAR WEST PLAZA, Suite 170
Austin, Texas 78731
512-345-8964 / Fax 512-647-0047
frank@franklyon.com

# EXHIBIT
# A

EER DIP
Rev 12-6-20

## Promissory Note

Date:                    _____, 2020

Borrower:        Earth Energy Renewables LLC, Debtor in Possession

Borrower's Mailing Address:                        Box 2185, Canyon Lake,
                                                                        Comal County, Texas   78133

Lender:           EER DIP Group

Place for Payment:           C/O Frank Lyon
                                            3508 Far West Blvd.
                                            Austin TX 78731

Principal Amount:      $675,000.00

Annual Interest Rate:           8% per annum

Annual Interest Rate on Matured, Unpaid Amounts:           18% per annum.

Terms of Payment (principal and interest):

> All outstanding principal and any accrued and unpaid interest are due and payable on the earlier of six (6) months from first funding or one (1) month following entry of a final order confirming Debtor's plan of reorganization in Case NO. 20-51780-RBK - United States Bankruptcy Court For The Western District of Texas, San Antonio Division.

Prepayment:

> This Note may be prepaid at any time without penalty or charge.

Security for Payment:

> This note is secured by the Pilot Plant constructed by Borrower for the purpose of producing medium chain fatty acids and their derivatives) located at 6150 Mumford Rd. Bryan TX, 77807.

> This note is further secured by the intellectual property of Borrower, provided however, that the interest of Lender shall be junior and subordinate to the interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC.

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower

EER DIP
Rev 12-6-20

promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

Notwithstanding any other provision of this note, in the event of a default, before exercising any of Lender's remedies under this note or any deed of trust or security agreement securing it, Lender will first give Borrower written notice of default and Borrower will have ten days after notice is given in which to cure the default. If the default is not cured ten days after notice, Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

If Borrower defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Lender may declare the unpaid principal balance, earned interest, and any other amounts owed on the note immediately due. Borrower and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Borrower also promises to pay reasonable attorney's fees and court and other costs if this note is placed in the hands of an attorney to collect or enforce the note. These expenses will bear interest from the date of advance at the Annual Interest Rate on Matured, Unpaid Amounts. Borrower will pay Lender these expenses and interest on demand at the Place for Payment. These expenses and interest will become part of the debt evidenced by the note and will be secured by any security for payment.

Subject to Lenders prior right to convert as set forth above, Borrower may prepay this note in any amount at any time before the Maturity Date without penalty or premium. In the event Borrower desires to prepay, Borrower shall give Lender 10 days prior notice.

Interest on the debt evidenced by this note will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the Principal Amount or, if the Principal Amount has been paid, refunded. On any acceleration or required or permitted prepayment, any excess interest will be canceled automatically as of the acceleration or prepayment or, if the excess interest has already been paid, credited on the Principal Amount or, if the Principal Amount has been paid, refunded. This provision overrides any conflicting provisions in this note and all other instruments concerning the debt.

Each Borrower is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If any provision of this note conflicts with any provision of a loan agreement, deed of trust, or security agreement of the same transaction between Lender and Borrower, the provisions of the loan agreement/deed of trust/security agreement will govern to the extent of the conflict.

2

EER DIP
Rev 12-6-20

*Choice of Law*
  This note will be construed under the laws of the state of Texas, without regard to choice-of-law rules of any jurisdiction.

**BORROWER ACKNOWLEDGES THAT THE LENDER HAS MADE NO REPRESENTATION THAT THE LENDER WILL REFINANCE THE INDEBTEDNESS EVIDENCED HEREBY OR EXTEND CREDIT, AT MATURITY OF THIS NOTE OR OTHERWISE, TO BORROWER, ANY GUARANTOR OF THIS NOTE OR ANY OTHER PARTY CONNECTED IN ANY WAY WITH THIS NOTE. THIS NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. ANY AMENDMENT OR MODIFICATION OF THIS NOTE SHALL BE IN WRITING AND SIGNED BY THE PARTY BOUND THEREBY.**

This Note is subject to the approval of the United States Bankruptcy Court For The Western District Of Texas San Antonio Division  - Case NO. 20-51780-RBK.

This Note is subject to the terms of that certain Intercreditor Agreement of even date herewith.

BORROWER
Earth Energy Renewables LLC

By: _____
   Jeffrey J. Wooley
   Manager

12-6-20
DIP EER

# Intercreditor Agreement

**Date**:  _____, 2020

**Parties**:  The Parties listed below have an interest in the Obligations in the percentages set forth next to their names:

| Participant | Percentage |
|---|---|
| | |
| BOOTRUST – Custodian FBO Mark A Edelman Traditional IRA | 11.11% |
| David Craig | 3.70% |
| Gerald Gerstner | 4.44% |
| Jack Goralink | 2.96% |
| Mary Zahner | 1.48% |
| Peter Hempken | 3.70% |
| Ted Bauer | 0.74% |
| J Tim O'Meara | 2.96% |
| Paul Fouts | 4.44% |
| Greg Sundberg | 3.70% |
| Stuart Shaw | 29.63% |
| Alan Nalle | 8.52% |
| John C Wooley, Jeffrey J Wooley | 22.59% |

**Collateral**:  Rights of the Parties to the property listed below as more particularly described in the documentation for Borrower's respective Obligations to each Party:

All of Debtor's interest in the Pilot Plant constructed by Borrower for the purpose of producing medium chain fatty acids and their derivatives) located at 6150 Mumford Rd. Bryan, TX, 77807; and

All of Debtor's interest in the intellectual property of Borrower, provided however, that the interest of Lender shall be junior and subordinate to the interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC.

and all replacements, substitutions and proceeds of that property.

**Obligations**:  That certain Promissory Note of even date herewith in the original principal sum of $675,000.00 from Earth Energy Renewables LLC ("Debtor") to EER DIP Group ("Secured Party").

1

12-6-20
DIP EER

It is expressly agreed that Alan Nalle, and John Spencer Cobb are the holders of other Notes from Debtor which are secured by liens including a Deed of Trust on the real property on which the Piot Plant referred to above is located and on the Intellectual Property which are not a part of this intercreditor Agreement.

**Borrower**:     Earth Energy Renewables LLC, Debtor in Possession

The Parties acknowledge that their respective ownership of the Obligations are of equal dignity and are all secured by security interests in the collateral.

The Parties hereby agree that they will each notify the other of any defaults concerning the Obligations and that they will cooperate with regard to any action taken against the Collateral.

The general terms and conditions set forth in Exhibit A (the "General Terms and Conditions") are incorporated into these Terms and Conditions by reference in their entirety.  If there is a conflict between these Terms and Conditions and the General Terms and Conditions, these Terms and Conditions shall govern.  Unless defined in these Terms and Conditions, capitalized terms used in the General Terms and Conditions shall have the meanings ascribed to them in these Terms and Conditions.

**Governance**
The Parties hereby agree that all decisions regarding the Collateral and any action to be taken regarding it shall be made by all the Parties as a group. The Parties further agree that no individual action regarding the Collateral shall be allowed and that any such individual action shall be void.

The parties acknowledge that Mark Edelman ( hereinafter "Lead Lender") is hereby designated by the Lenders as the lead lender and shall have all of the rights and privileges set forth in this agreement. Notwithstanding any other provision of this agreement it is understood and agreed by the parties that Lead Lender is to be the lead lender with regard to all decisions made by the Lenders as a group and shall accordingly have a 51% voting majority on any decisions which the Parties make as a group. To the extent of making any decision for which a vote of the remaining Lenders is necessary, as between themselves the remaining Lenders shall be entitled to one vote for each dollar advanced.

This Agreement, the Security Agreement and the Note secured thereby are subject to the approval of the United States Bankruptcy Court For The Western District Of Texas San Antonio Division  - Case NO. 20-51780-RBK.

Signature Page Follows

2

12-6-20
DIP EER

The Participants may execute this Agreement in counterparts by signing a signature page in the form set out below.

Intercreditor Agreement Signature Page

The undersigned hereby agrees to participate in the intercreditor agreement dated _____ regarding the EER DIP Group in the following amount$ _____.


Signature: _____

Printed Name: _____


Address: _____

                _____

                _____

Telephone: _____


Email: _____


Date: _____

12-6-20
DIP EER

## Exhibit A

## General Terms and Conditions

**Information Sharing.**

In the event that either Party shall receive possession or control of any books and records which contain information identifying or pertaining to any of the Collateral or the Borrower in which the other Party has been granted a lien, it shall notify the other Party that it has received such books and records and shall, as promptly as practicable thereafter, make available to the other Party duplicate copies of such books and records in the same form as the original. The failure of either Party to share information shall not create a cause of action against the Party failing to share information.

**Notices of Defaults.**

The Parties agree to endeavor to give to the other copies of any notice of the occurrence of a default, respectively, simultaneously with the sending of such notice to Borrower, but the failure to do so shall not affect the validity of such notice or create a cause of action against the Party failing to give such notice or create any claim or right on behalf of any third party. The sending or receipt of such notice shall not obligate the recipient to cure such default.

**Distribution of Collateral**

All proceeds of Collateral resulting from any enforcement action, the closing of the sale of any of the Collateral or hazard or other insurance claims when, in any such case, a default or event of default has occurred and is then continuing shall be distributed in accordance with ratio of the outstanding obligations to each Party.

**Modifications and Waivers.**

Any modification or waiver of any provision of this Agreement, or any consent to any departure by either Party from the terms hereof, shall not be effective in any event unless the same is in writing and signed by the Parties, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given.

**Amendments to Financing Arrangements or to this Agreement.**

The Parties shall each endeavor to notify the other Party of any material amendment or modification of their respective loan documents, but the failure to do so shall not create a cause of action against the Party failing to give such notice or create any claim or right on behalf of the other Party. The Parties shall, upon request of the other Party, provide copies of all such modifications or amendments and copies of all other documentation relevant to the Collateral.

12-6-20
DIP EER

## Rights to Purchase

In the event of a default by Borrower if either party as an alternative to enforcing the obligation shall have the right, exercisable by written notice given not later than thirty (30) days after the date of delivery of a notice of default to purchase the Obligation of the other Party and all of the right, title and interest of other Party for a purchase price equal to the amount that would be required to cause the non exercising Party's Obligation to be paid in full as of the closing date.

## General

(a)    No warranties of any kind are given with respect to the Obligations disclosed under this Agreement or any use thereof, except as may be otherwise agreed in writing.

(b)    This Agreement will not create any obligation on the part of a party to enter into a business relationship with the other party other than a expressed herein.  Nothing in this Agreement will be construed as creating a joint venture, partnership or employment relationship.

(c)    This Agreement is not assignable and is personal to the parties except with the prior written consent of the other party.

(d)    This Agreement supersedes all prior discussions and writings, and constitutes the entire agreement between the parties, with respect to the subject matter hereof. No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in enforcing any right will be deemed a waiver.

(e)    Each of the parties will from time to time execute and deliver all such further documents and instruments and do all acts and things as the other party may reasonably require in order to effectively carry out, better document, or perfect the full intent and meaning of this Agreement.

(f)    In the event that any of the provisions of this Agreement will be held by a court or other tribunal of competent jurisdiction to be unenforceable, the remaining portions hereof will remain in full force and effect.

(g)    The substantive laws of the State of Texas (and not its conflicts of law principles or any conflicting provision or rule that would require the law of any other jurisdiction be applied) govern all matters arising out of, or relating to, this Agreement and all of the transactions it contemplates, including without limitation its validity, interpretation, construction, performance and enforcement;

(h)    Headings are solely for convenience of reference and are not part of, and may not be used to construe, this Agreement. Terms in the singular shall include terms in the plural and vice-versa.  The term "or" is used in the inclusive sense and means "and/or" unless otherwise specified.

(i)    Notices. Any notice required or desired to be served, given or delivered hereunder shall be in writing (including facsimile or email transmission), and shall be deemed to have been

12-6-20
DIP EER

validly served, given or delivered upon the earlier of (a) personal delivery to the address set forth below; (b) in the case of mailed notice, five (5) days after deposit in the United States mails, with proper postage for certified mail, return receipt requested, prepaid, or in the case of notice by Federal Express or other reputable overnight courier service, one (1) Business Day after delivery to such courier service; and (c) in the case of facsimile transmission, upon transmission with confirmation of receipt, in any such case addressed to the party as set forth below.

EER DIP
12-6-20

## Security Agreement

Date: _____, 2020

Debtor:            Earth Energy Renewables :LLC Debtor in Possession

Debtor's Mailing Address:    Box 2185,
                             Canyon Lake, Comal County, Texas 78133

Secured Party:          EER DIP Group

Secured Party's Mailing Address:        C/O Ken Richey
                                        1910 Justin Lane
                                        Austin Texas 78757

Classification of Collateral:   Equipment and General Intangibles

Collateral:

        All of Debtor's interest in the Pilot Plant constructed by Borrower for the
        purpose of producing medium chain fatty acids and their derivatives) located
        at 6150 Mumford Rd. Bryan, TX, 77807; and

        All of Debtor's interest in the intellectual property of Borrower, provided
        however, that the interest of Lender shall be junior and subordinate to the
        interests of Alan Nalle, John Spencer Cobb and Ara EER Holdings, LLC;

        and all replacements, substitutions and proceeds of that property.

Obligation

        That certain Promissory Note of even date herewith in the original principal sum
        of $675,000.00 from Debtor to Secured Party.

    Other debt/Future advances:    The security interest also secures all other present and
                                    future debts and liabilities of Debtor and/or Obligor to
                                    Secured Party, including future advances.

Debtor's Representations Concerning Debtor and Locations:

        Debtor's principal place of business: P.O. Box 2185, Canyon Lake, TX 78133
        Pilot Plant: 4150 Mumford Rd., Bryan, Brazos County, TX 77807

        Debtor's federal tax identification number is :        46-1266509

1

EER DIP
12-6-20

Debtor's records concerning the Collateral are located at
    Box 2185, Canyon Lake, TX 78133 and
    6150Mumford Rd, Bryan TX 77807

Debtor grants to Secured Party a security interest in the Collateral and all its proceeds to secure the Obligation and all renewals, modifications, and extensions of the Obligation. Debtor authorizes Secured Party to file a financing statement describing the Collateral.

**A.    Debtor represents and warrants the following:**

1.    No financing statement covering the Collateral is filed in any public office except with respect to U.S. Patent No. 10,662,447.

2.    Debtor owns the Collateral and has the authority to grant this security interest, free from any setoff, claim, restriction, security interest, or encumbrance except liens for taxes not yet due.

3.    All information about Debtor's financial condition is or will be accurate when provided to Secured Party.

4.    An accurate copy of Debtor's Company Agreement has been delivered to Secured Party. There are no changes to the Company Agreement not reflected in the copy delivered to Secured Party.

5.    Debtor has obtained the written consent of all persons required under the Company Agreement or otherwise to authorize the security interest created by this agreement and Secured Party's exercise of its rights hereunder. On request of Secured Party, Debtor will deliver to Secured Party an executed original of that consent.

6.    Granting of the lien contemplated hereunder is subject to approval by the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in Case No. 20-51780-rbk.

**B.    Debtor agrees to—**

1.    Defend the Collateral against all claims adverse to Secured Party's interest; pay all taxes imposed on the Collateral; keep the Collateral free from liens, except for liens of record and those in favor of Secured Party or for taxes not yet due; keep the Collateral in Debtor's possession and ownership except as otherwise provided in this agreement; maintain the Collateral in good condition; and protect the Collateral against waste, except for ordinary wear and tear.

2.    Insure the collateral in accord with Secured Party's reasonable requirements regarding choice of carrier, casualties insured against, and amount of coverage.  Policies will be written in favor

EER DIP
12-6-20

of Debtor and Secured Party according to their respective interests or according to Secured Party's other requirements. All policies will provide that Secured Party will receive at least ten days' notice before cancellation, and the policies or certificates evidencing them will be provided to Secured Party when issued. Debtor assumes all risk of loss and damage to the collateral to the extent of any deficiency in insurance coverage. Debtor irrevocably appoints Secured Party as attorney-in-fact to collect any return, unearned premiums, and proceeds of any insurance on the collateral and to endorse any draft or check deriving from the policies and made payable to the Debtor.

3. Pay all Secured Party's expenses, including reasonable attorney's fees, incurred to obtain, preserve, perfect, defend, and enforce this agreement or the Collateral and to collect or enforce the Obligation. These expenses will bear interest from the date of advance at the rate stated in the Note for matured, unpaid amounts and are payable on demand at the place where the Obligation is payable. These expenses and interest are part of the Obligation and are secured by this agreement.

4. Sign and deliver to Secured Party any documents or instruments that Secured Party considers necessary to obtain, maintain, and perfect this security interest in the Collateral.

5. Notify Secured Party immediately of any event of default and of any material change (a) in the Collateral, (b) in Debtor's Mailing Address, (c) in the location of any Collateral, (d) in any other representation or warranty in this agreement, and (e) that may affect this security interest, and of any change (f) in Debtor's name and (g) of any location set forth above to another state.

6. Use the Collateral primarily according to the stated classification.

7. Maintain accurate records of the Collateral at the address set forth above; furnish Secured Party any requested information related to the Collateral; and permit Secured Party to inspect and copy all records relating to the Collateral.

8. Perform all obligations to be performed by Debtor under the Company Agreement.

9. Notify Secured Party of any default known to Debtor of any other person under the Company Agreement and of any notice of default given under the Company Agreement.

10. Enforce the obligations of other persons under the Company Agreement and at Secured Party's request, at Debtor's expense, take action requested by Secured Party to enforce the obligations of other persons and exercise the rights of Debtor under the Company Agreement.

**C.    Debtor agrees not to—**

1. Sell, transfer, or encumber any of the Collateral without Secured Party's prior, written consent or order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in Case No. 20-51780-rbk.

EER DIP
12-6-20

2.    Change its name or jurisdiction of organization, merge or consolidate with any person, or convert to a different entity without notifying Secured Party in advance and taking action to continue the perfected status of the security interest in the Collateral.

3.    Consent to or approve any modification of the Company Agreement.

4.    Compromise or reduce any payment or distribution to be made to Debtor on the Collateral.

**D.    Secured Party Not Liable**

Debtor remains liable under the Company Agreement for all its obligations thereunder. Secured Party has no liability thereunder because of this agreement. Secured Party is not liable, because of this agreement, for any obligation of Debtor under the Company Agreement.

**E.    Default and Remedies**

1.    A default exists if—

   a.    Debtor, Obligor, or any secondary obligor fails to timely pay or perform any obligation or covenant in any written agreement between Secured Party and any of Debtor, Obligor, or secondary obligor;

   b.    any warranty, covenant, or representation in this agreement or in any other written agreement between Secured Party and any of Debtor, Obligor, or secondary obligor is materially false when made;

   c.    a receiver is appointed for Debtor, Obligor, any secondary obligor, or any Collateral;

   d.    any Collateral is assigned for the benefit of creditors;

   e.    a bankruptcy or insolvency proceeding is commenced by Debtor, the Company, a partnership in which Debtor is a general partner, Obligor, or any secondary obligor;

   f.    a bankruptcy or insolvency proceeding is commenced against Debtor, the Company, a partnership in which Debtor is a general partner, Obligor, or any secondary obligor, and the proceeding continues without dismissal for sixty days, the party against whom the proceeding is commenced admits the material allegations of the petition against it, or an order for relief is entered;

   g.    any of the following parties is dissolved, begins to wind up its affairs, is authorized to dissolve or wind up its affairs by its governing body or persons, or any event occurs or condition exists that permits the

EER DIP
12-6-20

dissolution or winding up of the affairs of any of the following parties: Debtor; the Company; a partnership of which Debtor is a general partner; Obligor; or any secondary obligor; or

h.   any Collateral is impaired by loss, theft, damage, levy and execution, issuance of an official writ or order of seizure, or destruction, unless it is promptly replaced with collateral of like kind and quality or restored to its former condition.

2.   If a default exists, Secured Party may, subject to order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in Case No. 20-51780-rbk:

a.   demand, collect, convert, redeem, settle, compromise, receipt for, realize on, sue for, and adjust the Collateral either in Secured Party's or Debtor's name, as Secured Party desires, or take control of any proceeds of the Collateral and apply the proceeds against the Obligation;

b.   take possession of any Collateral not already in Secured Party's possession, without demand or legal process, and for that purpose Debtor grants Secured Party the right to enter any premises where the Collateral may be located;

c.   without taking possession, sell, lease, or otherwise dispose of the Collateral at any public or private sale in accordance with law;

d.   exercise any rights and remedies granted by law or this agreement;

e.   notify obligors on the Collateral to pay Secured Party directly;

f.   as Debtor's agent, make any endorsements in Debtor's name and on Debtor's behalf of any proceeds of the Collateral; and

g.   exercise and enforce all rights, including voting rights, available to an owner of the Collateral.

3.   Foreclosure of this security interest by suit does not limit Secured Party's remedies, including the right to sell the Collateral under the terms of this agreement. Secured Party may exercise all remedies at the same or different times, and no remedy is a defense to any other. Secured Party's rights and remedies include all those granted by law and those specified in this agreement.

4.   Secured Party's delay in exercising, partial exercise of, or failure to exercise any of its remedies or rights does not waive Secured Party's rights to subsequently exercise those remedies or rights. Secured Party's waiver of any default does not waive any other default by Debtor. Secured Party's waiver of any right in this agreement or of any default is binding only if

5

EER DIP
12-6-20

it is in writing. Secured Party may remedy any default without waiving it.

5.      Secured Party has no obligation to clean or otherwise prepare the Collateral for sale.

6.      Secured Party has no obligation to collect any of the Collateral and is not liable for failure to collect any of the Collateral, for failure to preserve any right pertaining to the Collateral, or for any act or omission on the part of Secured Party or Secured Party's officers, agents, or employees, except willful misconduct.

7.      Secured Party has no obligation to satisfy the Obligation by attempting to collect the Obligation from any other person liable for it. Secured Party may release, modify, or waive any collateral provided by any other person to secure any of the Obligation. If Secured Party attempts to collect the Obligation from any other person liable for it or releases, modifies, or waives any collateral provided by any other person, that will not affect Secured Party's rights against Debtor. Debtor waives any right Debtor may have to require Secured Party to pursue any third person for any of the Obligation.

8.      If Secured Party must comply with any applicable state or federal law requirements in connection with a disposition of the Collateral, such compliance will not be considered to adversely affect the commercial reasonableness of a sale of the Collateral.

9.      Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim any warranties of title or the like. This procedure will not be considered to adversely affect the commercial reasonableness of a sale of the Collateral.

10.     If Secured Party sells any of the Collateral on credit, Debtor will be credited only with payments actually made by the purchaser and received by Secured Party for application to the indebtedness of the purchaser. If the purchaser fails to pay for the Collateral, Secured Party may resell the Collateral and Debtor will be credited with the proceeds of the sale.

11.     If Secured Party purchases any of the Collateral being sold, Secured Party may pay for the Collateral by crediting the purchase price against the Obligation.

12.     Secured Party has no obligation to marshal any assets in favor of Debtor or against or in payment of the Note, any of the Other Obligation[s], or any other obligation owed to Secured Party by Debtor or any other person.

13.     If the Collateral is sold after default, recitals in the bill of sale or transfer will be prima facie evidence of their truth and all prerequisites to the sale specified by this agreement and by law will be presumed satisfied.

**F.      General**

1.      Notice is reasonable if it is mailed, postage prepaid, to Debtor at Debtor's Mailing

EER DIP
12-6-20

Address at least ten days before any public sale or ten days before the time when the Collateral may be otherwise disposed of without further notice to Debtor.

2.      This security interest will neither affect nor be affected by any other security for any of the Obligation. Neither extensions of any of the Obligation nor releases of any of the Collateral will affect the priority or validity of this security interest.

3.      This agreement binds, benefits, and may be enforced by the successors in interest of Secured Party and will bind all persons who become bound as debtors to this agreement. Assignment of any part of the Obligation and Secured Party's delivery of any part of the Collateral will fully discharge Secured Party from responsibility for that part of the Collateral. If such an assignment is made, Debtor will render performance under this agreement to the assignee. Debtor waives and will not assert against any assignee any claims, defenses, or setoffs that Debtor could assert against Secured Party except defenses that cannot be waived. All representations, warranties, and obligations are joint and several as to each Debtor.

4.      This agreement may be amended only by an instrument in writing signed by Secured Party and Debtor.

5.      The unenforceability of any provision of this agreement will not affect the enforceability or validity of any other provision.

6.      This agreement will be construed according to Texas law, without regard to choice-of-law rules of any jurisdiction.

7.      Interest on the Obligation secured by this agreement will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the Obligation or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the Obligation or, if the principal of the Obligation has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the Obligation.

8.      In no event may this agreement secure payment of any debt subject to title IV of the Texas Finance Code or create a lien otherwise prohibited by law.

9.      When the context requires, singular nouns and pronouns include the plural.

EER DIP
12-6-20

      10.    Any term defined in sections 1.101 to 11.108 of the Texas Business and Commerce Code and not defined in this agreement has the meaning given to the term in the Code.

This Security Agreement and the Note secured hereby is subject to the approval of the United States Bankruptcy Court For The Western District Of Texas San Antonio Division  - Case NO. 20-51780-RBK.

This Security Agreement and the Note secured hereby is subject to the terms of that certain Intercreditor Agreement of even date herewith.

     DEBTOR
     Earth Energy Renewables LLC,
     Debtor in Possession

     By: _____
     Jeffrey J. Wooley, Manager